GENERAL MATTERS, INC., a Florida
Corporation d/b/a York Associates,
Plaintiff-Appellant,

v.

PENNY PRODUCTS, INC., an Indiana
Corporation, Defendant-Appellee.

No. 79–2891.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 27, 1981.

Michael J. Appleton, Winter Park, Fla.,
for plaintiff-appellant.

George L. Clapham, Orlando, Fla., for
defendant-appellee.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and MARK-EY *, Chief Judge.

GODBOLD, Chief Judge:

This suit for breach of contract arises out of an agreement between General Matters, Inc., d/b/a York Associates (York), plaintiff-appellant, and Penny Products, Inc., defendant-appellee. The parties generally agree on the underlying facts, with one or two exceptions. York is a Florida corporation engaged in buying and reselling various types of food items, primarily closeouts and surplus inventory from factories throughout the United States. Normally the products are resold and shipped directly from the factory to York's customers. Leon Kellman is the president of York. Penny Products is a "contract food packer," a company that packs food items for other companies and distributes them to the market. Thomas M. Talbott is the president of Penny Products.

In January 1978, Talbott was given an opportunity by Continental Can Corporation to buy at a reduced price empty cans, some of which had been water-damaged during a warehouse fire. The cans had been produced for the financially troubled Indian River Processors and bore the trademark "Riversweet." [1] Talbott subsequently telephoned Kellman to discuss the possibility of Penny Products' buying the cans and filling them with orange and grapefruit juice for sale to York at reduced prices. York, in turn, could resell the juices to its customers in a brokerage-type operation for less than the prevailing market price. The parties disagree, however, about the number of cases of juice discussed in the telephone conversation. Kellman testified that Talbott offered to sell him 25,000 cases of grapefruit juice and 10,000 cases of orange juice. Although Talbott implied that a figure of 35,000 cases had been discussed, he

testified that he had informed Kellman that the precise number of cases to be sold would depend upon how many cans had been damaged beyond use.

January 8, 1978, a day or two after the telephone conversation, York issued a purchase order to Penny Products for 25,000 cases of Indian River unsweetened grapefruit juice, at $3.50 a case, and 10,000 cases of Indian River orange juice, at $4.25 a case. Both parties agreed at trial that Penny Products made no written objection at any time to this purchase order. However, Talbott testified that he called Kellman after receiving the purchase order to warn him that Penny Products could not "guarantee" a "pack-out" of 35,000 cases because of uncertainty about the number of cans damaged beyond use.

During approximately a month after the submission of the purchase order Penny Products shipped 7,000 cases of grapefruit juice and 3,815 cases of orange juice to York's customers. During this same period Penny Products sold 3,456 cases to another customer, MAV Sales.

York paid all invoices submitted by Penny Products except a final invoice in the amount of $16,078.00, which York refused to pay after learning that Penny Products would not make any more shipments under the purchase order. As a result of Penny Products' failure to supply the balance of the 35,000 cases York was unable to fill orders from its customers for more than 20,000 cases.

York sought specific performance of the contract or damages for breach of contract. Penny Products counterclaimed for York's nonpayment of the final invoice.

Relying on Talbott's testimony,[2] the district court found that the parties' agreement was "necessarily limited to the availability of usable cans . . . so that [York] was on notice that it was not within the power

---

* Chief Judge of the U.S. Court of Customs and Patent Appeals, sitting by designation.

1. Ocean Spray Cranberries had purchased the "Riversweet" trademark but had given Talbott permission to use the left-over cans possessed by Continental Can. ·

2. In its recitation of the facts the court adopted Talbott's rather than Kellman's version of the initial telephone conversation: "Talbott advised Kalman [sic] that there were approximately 35,000 cans [sic] which could possibly be utilized for filling and selling, but that how many were usable was a matter of determination as they were processed."

of [Penny Products] to keep on producing Indian River cans beyond the availability of the undamaged cans in this salvage lot." The court also ruled that York's confirmatory purchase order satisfied the Florida statute of frauds, 19A Fla.Stat.Ann. § 672.-2–201(2).[3] Although the purchase order called for 35,000 cases the district court concluded that the oral quantity limitation to the number of usable cans was admissible under Florida's parol evidence rule, 19A Fla.Stat.Ann. § 672.2–202, as evidence of a "consistent additional term."[4]

Because the district court found that the agreement was limited to the number of usable cans it held that York was not entitled to recover damages based upon Penny Products' failure to deliver 35,000 cases. On the counterclaim, the court held that Penny Products was entitled to recover the amount of its unpaid invoice, $16,078, subject, however, to a setoff. Since the court also concluded that Penny Products should have made all usable cans available to York it awarded York profit that would have been made on the 3,456 cases sold by Penny Products to MAV Sales. This amount was determined by the district court to be "$1.00 per case, divided by ½," an apparent reference to a separate agreement between York and Kandy Man Sales Company (not a party to this suit or to the agreement between York and Penny Products) to divide equally profits from all sales made by either company. The amount of the setoff thus was $1,728. York appeals from the district court's ruling on its damage claim in favor of Penny Products and the court's reduction of the amount of the setoff by one-half.

### The Damage Claim

York contends that because the unobjected-to purchase order satisfied the statute of frauds Penny Products was bound by it. Therefore, according to York, the district court's reliance on testimony about the oral understanding that limited the agreement to the quantity of cans available violates the parol evidence rule because this testimony contradicts the specific quantity term contained in the purchase order.

3. Florida's statute of frauds provides:
  (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
  (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.
  (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable:
  (a) If the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
  (b) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
  (c) With respect to goods for which payment has been made and accepted or which have been received and accepted (§ 672.2–606).

4. Florida's parol evidence rule provides:
  Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
  (1) By course of dealing or usage of trade (§ 671.1–205) or by course of performance (§ 672.2–208); and
  (2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

Assuming that the purchase order satisfies the statute of frauds,[5] York's argument, like the district court's application of the parol evidence rule, suffers from a misunderstanding of the interplay between the statute of frauds and the parol evidence rule.

York and the district court erroneously equate the requirements necessary to satisfy the statute of frauds with the requirements necessary to trigger the parol evidence rule. The parol evidence rule applies only to "[t]erms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement," 19A Fla. Stat.Ann. § 672.2–202. No confirmatory memoranda are present in this case. There is only a unilateral confirmatory memorandum—York's purchase order. For the parol evidence rule to apply York's purchase order must have been intended as a final expression of the agreement.

■ A purchase order need not be a final expression of agreement to satisfy the statute of frauds. Compliance with Fla. Stat.Ann. § 672.2–201(2) only removed Penny Products' statute of frauds defense, allowing the use of oral testimony to prove both the existence and terms of agreement, see *I. S. Joseph Co., Inc. v. Citrus Feed Co.,* 490 F.2d 185, 188 (5th Cir. 1974) (construing Florida statute of frauds). A court may examine oral testimony to determine if the writing was intended as a final expression of agreement, J. White & R. Summers, *Uniform Commercial Code* § 2–10 (2nd Ed. 1980); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.,* 400 F.Supp. 273, 278 (E.D.Wis.1975). Accordingly, the terms of a unilateral confirmatory writing that satisfies the statute of frauds are not conclusive evidence of the terms of an agreement. *Perdue Farms, Inc. v. Motts, Inc.,* 459 F.Supp. 7, 14 (N.D. Miss.1978).

■ The only evidence in the record that could support a finding that the purchase order was intended as a final expression of agreement as to quantity is Kellman's testimony that Talbott offered 35,000 cases in the initial phone conversation. However, Kellman's testimony conflicted with Talbott's on this precise point, and the district court credited Talbott's testimony. That credibility resolution, along with the district court's concomitant finding that the parties' agreement was limited to the number of usable cans in the salvage lot, is not clearly erroneous, see *Western Beef, Inc. v. Compton Investment Co.,* 611 F.2d 587, 590 (5th Cir. 1980).[6] Accordingly, we find that the district court properly ruled against York on its claim for breach of contract and in favor of Penny Products on its counterclaim.

*The Setoff*

■ Although the district court correctly awarded counterclaim damages to Penny Products subject to a setoff for the cans sold to MAV Sales, it erred in reducing by 50% the amount of the setoff. Presumably this reduction was occasioned by evidence that York had entered into an agreement to split its profits from this and other sales with Kandy Man. An agreement between York and one not party to this suit concerning the disposition of York's profits from all its sales contracts has no bearing on the amount of profit York would have realized if Penny Products had fully performed. In Florida the "purpose of an award of damages in a breach of contract action is to place the injured party in the same financial position as he would have occupied if the contract ha[d] been fully performed,"

---

5. Both parties agree that it does. However, the enforceability of the agreement need not rest solely on the unobjected-to purchase order because Penny Products, the party against whom enforcement was sought, admitted through testimony that a contract for sale had been made. The agreement thus satisfies the statute of frauds requirement contained in Fla.Stat.Ann. § 672.2–201(3)(b). *See* note 3 *supra.*

6. The district court's finding that the agreement was limited to the number of cans available also indicates that its application of § 672.-2–202 rested on a misapprehension of the relationship between the statute of frauds and the parol evidence rule rather than an implicit finding that the purchase order was intended as a final written expression of the agreement.

*Juvenile Diabetes Research Foundation v. Rievman*, 370 So.2d 33, 35 (Fla. DCA 1979). Stated another way, the aim of a breach of contract action is to award the nonbreaching party "a sum which is equivalent to the performance of the bargain," *Ashland Oil, Inc. v. Pickard*, 269 So.2d 714, 723 (Fla. DCA 1972), *cert. denied*, 285 So.2d 18 (Fla. 1973). Had Penny Products not breached the contract York would have received profits of $3,456.00. The ultimate destination of those profits is of no significance in this suit and should have been disregarded in the computation of the setoff.[7]

We REVERSE and REMAND the district court's computation of York's setoff with instructions to allow appellant a setoff equal to the total profits lost because of Penny Products' sale of cans to MAV Sales. The remainder of the judgment is AFFIRMED.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

7. Penny Products' reliance on *Long v. Kansas City M. & B. R. Co.*, 170 Ala. 635, 54 So. 62 (1910) is misplaced. In *Long* the court held that a partner who sued for sums owed the partnership could recover only to the extent of his interest in the partnership. Assuming that the Florida courts would follow *Long*, Penny Products contracted only with York, not with York and Kandy Man as a partnership or joint venture.