**Robert STOETZEL, Appellant and Cross-Appellee,**

v.

**CONTINENTAL TEXTILE CORPORATION OF AMERICA, Appellee and Cross-Appellant.**

**Nos. 84–1613, 84–1673.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 18, 1985.

Decided July 15, 1985.

Rehearing or Modification of Opinion Denied Aug. 14, 1985.

Douglas M. Calhoun, Asbury Park, N.J., for appellant and cross-appellee.

Martin M. Green, Clayton, Mo., for appellee and cross-appellant.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

This is a diversity action for breach of contract and fraud arising out of an employment agreement between plaintiff/appellant and cross-appellee Robert Stoetzel (Stoetzel) and defendant/appellee and cross-appellant Continental Textile Corporation of America (Continental). At trial, a jury awarded Stoetzel $69,808 for breach of contract. On appeal, Stoetzel seeks reversal of the order of the District Court[1] dismissing his claim for punitive damages and a new trial on that issue. In its cross-appeal, Continental seeks reversal of the judgment entered on the jury verdict and a directed verdict in its favor. We affirm.

## I. Facts

In 1981 Stoetzel was an employee of the White Knight division of Will Rogers, Inc. (White Knight) in New Jersey. White Knight sells textile products to health care providers. Stoetzel had been at White Knight for ten and one-half years and was a Regional Sales Manager. At a convention in Atlanta in the spring of 1981, Stoetzel saw his friend Robert Ihrke, an employee of Continental. At the convention Ihrke introduced Stoetzel to Leo Weiss, the president of Continental.

On returning to St. Louis, Weiss suggested to Ihrke that he attempt to get Stoetzel to work for Continental. Ihrke also was interested in having Stoetzel join Continental and pursued the matter with

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

Stoetzel by telephone. At first, Stoetzel was uninterested, because he had a secure position of over ten years with White Knight and was happy with his employment. Ihrke, however, was persistent and Stoetzel agreed to meet with Bob Gathman of Continental in order for Gathman to tell Stoetzel more about Continental. This meeting occurred in January 1982. Stoetzel was told that Weiss and Ihrke were very impressed with him and wanted him to join Continental.

In March 1982, Ihrke again spoke with Stoetzel and asked him to come to Continental's headquarters in St. Louis for an interview. Stoetzel agreed, and a meeting was held in April 1982. Stoetzel, Weiss, Ihrke, Gathman and Pam Reynolds, a senior vice president of Continental, attended the meeting. At the meeting, Weiss asked Stoetzel what it would take to get Stoetzel to join Continental. Stoetzel had two requirements. First, Stoetzel desired managerial duties over other sales personnel. Second, since Stoetzel was married and had two children, he refused to abandon his established sales position of ten and one-half years without some assurance of job security. The three Continental participants in this meeting who testified all stated that they understood that job security was one of Stoetzel's requirements. They told Stoetzel that his requirements would be met. Stoetzel was told that he would be given a two-year contract. Stoetzel told Continental that he was satisfied with the offer, but would have to discuss it with his wife. On receiving his wife's agreement, Stoetzel accepted Continental's offer of employment on the terms agreed to at the April 1982 meeting, which provided for a salary of $45,000 per year, a $265 a month automobile allowance, and a minimum term of two years.

Stoetzel resigned his position at White Knight and began working for Continental on May 23, 1982. During the week of December 1, 1982, six months after Stoetzel started work, Gathman presented Stoetzel with a written two-year contract. Included in this agreement was the following clause:

employment hereunder may be terminated by either party upon giving written notice of an intention to terminate. Such notice shall be given solely in writing at least thirty (30) days prior to the effective date of termination.

This was the first Stoetzel had ever seen or heard of a termination provision. Stoetzel told Gathman he would have to have an attorney look at the contract prior to signing it. Ten days later, before Stoetzel had consulted with an attorney, Weiss called Stoetzel and told him he was fired as of that day, December 10, 1982. He was told that the firing was part of a general personnel reduction at Continental.

Both Stoetzel and Continental presented a substantial amount of evidence regarding Stoetzel's job performance and behavior during his tenure at Continental. On Stoetzel's behalf, several former Continental employees and managers testified that Stoetzel had some success in training sales personnel. One salesman under his supervision went from being a poor salesman on the brink of being fired to being chosen Continental Salesman of the Month for two consecutive months. Another salesman Stoetzel worked with also made substantial, if less dramatic, progress and is now considered one of the best salesmen in the company.

On the other hand, Weiss commented that the profit margins on Stoetzel's sales were low, and both Weiss and Pam Reynolds testified that Stoetzel spent too much money entertaining customers. Weiss also expressed his displeasure at the fact that Stoetzel became intoxicated on alcohol at a training seminar for new employees. This occurred shortly after Stoetzel became an employee of Continental. At the end of the seminar and after working hours, several Continental employees were celebrating the end of the training session. Stoetzel was not the only Continental employee drinking at the celebration. There is no indication that Stoetzel was an alcoholic or that his drinking had any adverse impact on his job performance.

The case was submitted to the jury under the alternative theories of fraudulent inducement and breach of contract. The jury returned a verdict in favor of Stoetzel on the breach of contract claim for $69,808. This appeal and cross-appeal followed.

## II. Discussion

The appeal and cross-appeal raise several issues, which we will discuss in sequence. We first consider Continental's argument raised in its cross-appeal that Stoetzel's evidence was insufficient to show that a contract had been made. Next we address Continental's claim that the Statute of Frauds bars enforcement of the oral contract. Then we turn our attention to Continental's arguments concerning the adequacy of several of the jury instructions. Finally, we consider Stoetzel's contention that the issue of punitive damages should have been submitted to the jury.

### A. The Existence of the Contract

■ Continental contends that the evidence demonstrates that no contract was ever reached between the parties. It argues that none of its officers ever meant to give Stoetzel a two-year, "no cut" contract without a termination clause and thus that there was no meeting of the minds on the terms of the contract. Moreover, Continental contends that since reference was made to Stoetzel's signing a standard two-year contract, the negotiations at the April 1982 meeting could not have been complete since the agreement contained terms not discussed at that time. We disagree. One's assent to a contract is not determined by what one thinks yet fails to say, but by what one says and does. "Though there must be a meeting of the minds of the parties to constitute a contract, such meeting of the minds is to be determined by the expressed, and not by the secret, intention of the parties." *Roper v. Clanton*, 258 S.W.2d 283, 289 (Mo.Ct.App.1953). " 'If [one's] words or acts, judged by a reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is

immaterial what may be the real but unexpressed state of his mind on the subject.' " *Id.* (quoting 17 C.J.S. *Contracts* § 32 (1939)).

■ Here, there was sufficient evidence for the jury to conclude that an employment contract meeting Stoetzel's stated requirements for the position—namely salary, duties, and job security—was offered by Continental at the April meeting and that Stoetzel accepted this offer shortly thereafter. Although in the contract thus made terms such as fringe benefits were not set in stone, such items are merely collateral to the main agreement, in which Stoetzel was assured of a minimum two-year contract at a salary of $45,000 a year, plus a $265-a-month automobile allowance. The same is not true of the termination clause. Three of Continental's representatives in the April 1982 negotiations have admitted that they knew at that time that job security was one of Stoetzel's requirements. Prior to asking Stoetzel to sign Continental's standard contract in December 1982, Continental did nothing to indicate to Stoetzel that any of the terms of that contract would materially change the essential provisions of the agreement negotiated at the April 1982 meeting. The jury could reasonably have concluded that Stoetzel never would never agreed to leave his secure position of ten years had he been told that his new employer could fire him for any reason on thirty days notice. Similarly, the jury could have concluded that if a written agreement was contemplated by the parties, it was intended to serve merely as a memorialization of a contract that already had been formed. We are satisfied there is sufficient evidence in the record to support the jury's conclusion that a two-year employment contract at a salary of $45,000 a year with an additional $265-a-month car allowance was offered at the April 1982 meeting, that the offer contemplated that Stoetzel would be employed for the full two-year term unless there was just cause for his earlier dismissal, that Stoetzel accepted that offer, and that the

resulting contract was breached by Continental.

## B. The Statute of Frauds

■■■■ In its answer and in its motion for directed verdict at the close of plaintiff's case, Continental sought to have the contract claim dismissed as being barred by the Missouri Statute of Frauds which states in pertinent part:

No action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith....

Mo.Rev.Stat. § 432.010.

Continental correctly points out that the employment contract Stoetzel seeks to enforce was oral and for a period exceeding one year. Continental argues that the Statute of Frauds is by its plain language a complete defense to Stoetzel's contract claim.

Although the trial court overruled Continental's motion for summary judgment and subsequent motion for directed. verdict, there is in the record no statement of the trial court's reasons for removing the contract from the operation of the Statute.[2] We may, however, affirm on any ground supported by the record, even though that ground was not directly addressed (or addressed at all) in the court below. *Brown v. St. Louis Police Department,* 691 F.2d 393, 396 (8th Cir.1982), *cert. denied,* 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983).

Stoetzel argued to the trial court that two exceptions to the Statute are applicable to this agreement. First, Stoetzel argued that Continental's failure to object to the admission of evidence establishing the oral agreement constitutes a judicial admission which precludes Continental from asserting the Statute of Frauds as a defense even though it was pleaded. Continental contends that the Statute is still available as a defense even if the defendant admits the oral agreement. Missouri cases on this issue are in conflict. *Compare Sheinbein v. First Boston Corp.,* 670 S.W.2d 872, 879 (Mo.Ct.App.1984); *Justus v. Webb,* 634 S.W.2d 567, 569 (Mo.Ct.App.1982) (citing *Platte Valley Drainage District v. National Surety Co.,* 221 Mo.App. 898, 295 S.W. 1083 (1926); and *Miller v. Harper,* 63 Mo.App. 293, 296–97 (1895)) (supporting Stoetzel's position) *with Brooks v. Cooksey,* 427 S.W.2d 498, 504 (Mo.1968); *Jones v. Linder,* 247 S.W.2d 817, 820 (Mo.1952); *Footwear Unlimited, Inc. v. Katzenberg,* 683 S.W.2d 291, 295 (Mo.Ct.App.1984); *Whaling v. Little Piney Oil Company,* 623 S.W.2d 589, 591 (Mo.Ct.App.1981); and *Shaffer v. Hines,* 573 S.W.2d 420, 422 (Mo. Ct.App.1978) (supporting Continental's position). *Brooks,* decided in 1968, represents the most recent Missouri Supreme Court exposition on the subject. A careful reading of both *Brooks* and *Jones,* however, reveals that the language relied on by Continental is dicta. *See Brooks,* 427 S.W.2d at 500–01; *Jones,* 247 S.W.2d at 819. We note, moreover, that the judicial admission theory as a basis for removing an oral contract from the Statute of Frauds has been recognized by the Missouri legislature, albeit in a different context: in sales of goods under the Uniform Commercial Code, the legislature has specifically excluded from the operation of the sales article's Statute of Frauds contracts admitted by the party to be charged "in his pleading, testimony or otherwise in court." Mo.Rev.Stat. § 400.2–201(3)(b). In light of these somewhat conflicting signals from the courts and the legislature we are not prepared to say the District Court misconstrued Missouri law if it relied on the judicial admission theory to remove the contract from the operation of the Statute.

---

**2.** When Continental made its motion for directed verdict, both parties presented oral arguments to the trial court regarding the applicability of the Statute. After the trial was over,

Continental moved for judgment notwithstanding the verdict on several grounds, including the Statute. The trial court overruled this motion, stating that its prior legal rulings were correct.

Stoetzel also argued for application of the doctrine of part performance to remove the contract from the operation of the Statute. Part performance, however, is available in Missouri as an exception to the Statute only in equitable actions, not in cases at law. *Shy v. Lewis*, 321 Mo. 688, 12 S.W.2d 719, 720 (1928). Since this action could under Missouri law only be characterized as an action at law, it is evident that the District Court could not properly have based its decision on the part performance ground. Nonetheless, since the court had heard argument concerning the judicial admission theory, which is a plausible, if not talismanic, basis under Missouri law for removing a contract from the operation of the Statute, we defer to the District Court and assume that this or some other plausible basis, such as promissory estoppel, was relied on.[3]

A district court's ruling on an uncertain question of the law of the state in which it sits is entitled to great deference. *Orlando v. Alamo*, 646 F.2d 1288, 1290 (8th Cir.1981). Given the unclear state of Missouri law regarding the grounds upon which an oral contract otherwise subject to the Statute of Frauds may be taken out of the Statute, and the certainty with which the oral contract in the present case was established, we affirm the District Court's decision to remove this contract from the operation of the Statute.

## C. The Adequacy of the Jury Instructions

■■■ Continental contests the adequacy of four of the jury instructions.[4] The first contested instruction, set forth below, dealt with the mutually exclusive nature of the remedies sought by the plaintiff:

*Instruction 6:* The plaintiff has alleged alternatively that either he was given a two-year contract by the defendant and thereafter the defendant breached said contract, or, the defendant committed a fraud based on the misrepresentation that the plaintiff would receive a two-year contract.

One remedy mutually excludes the other. If you find that the defendant did in fact give the plaintiff a two-year contract and thereafter breached the same, then you cannot find that there was a fraud. On the other hand, if you find that a two-year contract was not given, then you may find for the plaintiff on the issue of fraud.

If you find that defendant did not give plaintiff a two-year contract you cannot find for the plaintiff on that issue. If you find that defendant did not commit a fraud based on the misrepresentation that plaintiff would receive a two-year contract, you cannot find for the plaintiff on that issue.

Designated Record (D.R.) at 34. The first two paragraphs of this instruction, with one immaterial change, are based on an instruction proposed by Stoetzel. The third paragraph was added by the court, and was accepted by Stoetzel without objection. Continental contends that this instruction was confusing and ambiguous, and warrants reversal. It argues that the instruction presented the jury with an "either-or" proposition that required the jury to find for Stoetzel under one of the two theories submitted. We disagree. The instruction begins with an accurate statement of the

---

**3.** The Missouri decisions on promissory estoppel are in substantially less than perfect harmony with one another, but they do generally recognize promissory estoppel as a basis for removing oral agreements from the operation of the Statute. *Compare Meinhold v. Huang*, 687 S.W.2d 596, 599 (Mo.Ct.App.1985); *Mayer v. King Cola Mid-America, Inc.*, 660 S.W.2d 746, 749 (Mo.Ct.App.1983); *and Morsinkhoff v. De Luxe Laundry & Dry Cleaning Co.*, 344 S.W.2d 639, 643 (Mo.Ct.App.1961) *with Footwear Unlimited, Inc. v. Katzenberg*, 683 S.W.2d 291, 296 (Mo.Ct.App.1984); *Katz v. Danny Dare, Inc.*, 610

S.W.2d 121, 124–25 (Mo.Ct.App.1980); *and Feinberg v. Pfeiffer Company*, 322 S.W.2d 163, 168–69 (Mo.Ct.App.1959).

**4.** Three of the contested instructions are discussed in this opinion. The fourth contested instruction is the verdict director on fraudulent inducement. The jury chose to rule for Stoetzel on the alternate ground of breach of contract, and therefore never reached the issue of fraud. Thus, any error in the fraud verdict director was harmless.

mutually exclusive nature of the remedies sought by the plaintiff. This discussion is followed by a brief statement of the circumstances under which each remedy is available. Continental argues that the use of the phrase "on that issue" in discussing each of the theories of recovery was confusing to the jury and that an ordinary layman could not have determined to which issue the phrase referred. This argument is without merit. Although the phrase "on that issue" is used in discussing each of the theories under which Stoetzel may recover, each theory of recovery is discussed in a separate sentence, thus making it highly unlikely that a jury would be confused by the discussion. In any event, "[w]here the charge to the jury correctly sets forth the law, a lack of perfect clarity will not render the charge erroneous." *Roth v. Black & Decker, Inc.,* 737 F.2d 779, 783 (8th Cir. 1984). Here the jury was not misled. Instruction 6 was followed by Instructions 7 and 8, which separately set forth the elements of both the fraud count and the contract count. The jury was given a clear statement of the difference between fraud and contract.[5] The district court "has broad discretion in framing the form and language of the charge to the jury, and as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal." *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983). Reading the instructions as a whole, we find that Instruction 6 did not mislead the jury, nor did it compel the jury to find for Stoetzel.

▇▇▇ Continental also asserts that the breach of contract instruction was erroneous:

> *Instruction 7:* With regard to the allegation of the plaintiff that the defendant breached its contract with the plaintiff your verdict must be for the plaintiff if you believe:

First, that the defendant offered to employ plaintiff for a minimum period of two years, and

Second, that the plaintiff accepted said offer, and

Third, that the defendant terminated said employment without just cause prior to the expiration of two years, and

Fourth, plaintiff was thereby damaged.

D.R. at 35. Continental argues that 1) the instruction fails to set forth its theory of the case in that it fails to mention the thirty-day termination clause, and 2) the instruction does not require the jury to find the existence of the contract in order to award damages. The second point borders on the frivolous: by asking the jury to determine if an offer was made by Continental and to determine if Stoetzel accepted the offer, the instruction plainly asks the jury first to determine whether a contract existed. The first point misapprehends the law. As plaintiff, Stoetzel is entitled to have the jury instructed in accordance with his theory of the case if it is "legally correct, supported by the evidence, and brought to the court's attention in a timely request." *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d at 823. As discussed *supra* at II–A, Stoetzel presented sufficient evidence for the jury to conclude that a contract was formed for a minimum period of two years. Therefore, Continental's contention that the termination clause should have been mentioned in Instruction 7 is without merit. Moreover, the jury was adequately instructed on Continental's theory of the case. Instruction 7(A) makes it clear that if no contract was made for employment for a definite term, Continental had the right to dismiss Stoetzel for any reason, or for no reason at all. Instruction 7(A) reads as follows:

> *Instruction 7(A):* When the term of an employment contract is indefinite, the employment is terminable at will, with or

---

**5.** Moreover, the verdict form itself presented the jury with mutually exclusive choices in ruling for either party on each issue, and left the jury

completely at liberty to rule against Stoetzel on either or both of his claims.

without cause. Therefore, unless you find that defendant agreed to employ plaintiff for a minimum term of two years, your verdict must be for defendant on plaintiff's claim for breach of contract.

D.R. at 36. Thus, the jury was instructed that if it determined that the contract was not for a specific term as Stoetzel alleged, Continental had the right to terminate Stoetzel at will. In short, the essence of the controversy—whether or not Continental had the right to terminate Stoetzel without just cause prior to the end of the two-year term—was presented to the jury on proper instructions.

## D. The Punitive Damages Claim

Stoetzel asserts that the District Court erred in dismissing his claim for punitive damages. In support of his contention he cites *Crues v. KFC Corporation*, 729 F.2d 1145 (8th Cir.1984). In that case, the plaintiff sought both actual and punitive damages for fraud. Although the issue of fraud was submitted to the jury, which found for the plaintiff and awarded compensatory damages, a directed verdict was granted dismissing the punitive damages claim. This Court held that under Missouri law the elements of a submissible claim for fraud include the elements constituting a submissible claim for punitive damages. Accordingly, this Court held that the district court, having submitted the fraud issue to the jury, had ruled inconsistently in finding insufficient evidence to support submission of the issue of punitive damages. *Cf. Young v. Mercantile Trust Company National Association*, 552 S.W.2d 247, 250–51 (Mo.Ct.App.1977) (directed verdict on punitive damages improper where evidence sufficient to submit issue of actual damages stemming from intentional, wrongful act, in this case conversion).

We agree with Stoetzel that in the present case the District Court ruled inconsistently by submitting the fraud claim to the jury, but granting a directed verdict on the issue of punitive damages. However, as discussed *supra* at 223–224 the District Court instructed the jury that the theories of fraudulent inducement and breach of contract are mutually exclusive. One recent Missouri case holds that, while a plaintiff may receive only one satisfaction for his loss, if different damages are pleaded and proved under each theory, a plaintiff may recover damages under both theories. *Clayton Brokerage Co. of St. Louis, Inc. v. Pilla*, 632 S.W.2d 300, 305–06 (Mo. Ct.App.1982). *Clayton Brokerage* is distinguishable, however, because the jury in that case was not instructed that fraudulent inducement and breach of contract are mutually exclusive remedies. As discussed *supra* at 223–224, Stoetzel consented to submission of the fraud and contract counts as alternative and mutually exclusive remedies. Thus, Stoetzel assumed the risk that the jury would rule for him on the issue of breach of contract rather than on the theory of fraudulent inducement. Punitive damages generally are not recoverable for breach of contract; they are available only when the breach amounts to an independent tort, with proof of malice, wantonness, and oppression. *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169, 176 (Mo.Ct.App.1982). Here, Stoetzel's contract claim was for simple breach. At no time did Stoetzel assert that the breach was wanton or malicious as required by Missouri law if punitive damages are sought, nor did he seek to have the jury instructed on malicious breach of contract. Stoetzel's demand for punitive damages was based solely on his claim of fraudulent inducement. Since the jury chose to find for Stoetzel on his contract claim rather than his fraud claim, and since the jury was instructed, with Stoetzel's assent, that these two claims represent alternative and mutually exclusive theories of recovery, the issue of actual damages for fraud was never reached, and consequently the issue of punitive damages could not have been reached.

## III. Conclusion

We have reviewed the other arguments of the parties and find them to be without

merit. Accordingly, we affirm the judgment of the District Court.