**CHEROKEE OIL COMPANY, LTD., etc., Plaintiff,**

v.

**UNION OIL COMPANY OF CALIFORNIA, etc., Defendant.**

No. 87–1023–CIV–T–17.

United States District Court, M.D. Florida, Tampa Division.

Feb. 24, 1989.

Paul S. Carr, Ruskin, Fla., for plaintiff.

William C. Frye, Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, Tampa, Fla., for defendant.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's motion for summary judgment and Plaintiff's response thereto. Pursuant to the Court's request of February 3, 1989, Plaintiff filed supporting exhibits to his response on February 13, 1989.

FACTS:

Plaintiff Cherokee Oil Company. Ltd. (hereinafter "Cherokee") negotiated with Defendant Union Oil Company of California (hereinafter "Unocal") to become the

exclusive agent for the sale and/or disposal of a product known as "liquifier". Liquifier is a mixture of various liquid solvents which is created when two or more solvents become intermixed. This occurs when a pipe used for transferring one solvent is used to transfer a different solvent. Until the pipe is completely "washed out" by the second solvent, the solution is a mixture of two solvents called "liquifier."

Plaintiff is seeking payment for expert and consultation services commencing on or about May 3, 1985, and storage charges for 30,000 gallons of liquifier from June 24, 1986 onward. Cherokee began to bill Unocal for these services beginning on July 23, 1986.

Cherokee purchased liquifier from Unocal beginning at least as far back as August 2, 1985 (See Composite Exhibits B, C, and D to Dkt. 54). These purchases stopped soon after John Friday, a then employee of Defendant, was transferred to Tampa as plant manager effective July 16, 1985. Charles Eidson, president of Cherokee, met with John Friday and discussed a proposal to dispose of liquifier by selling it to utility companies as a fuel additive.

Charles Eidson testified that a "pass by —get acquainted" meeting took place in September, 1985, at which time a firm commitment was made to him, and at which he requested a written contract for Cherokee to become the exclusive agent for liquifier for Unocal for a three year term, with an automatic two-year renewal. This agreement was contingent upon obtaining approvals from Federal and Florida regulatory agencies exempting liquifier from the requirements for hazardous waste disposal. Charles Eidson further testified that Unocal agreed to provide him with three trucks on which the Cherokee logo would appear identifying Cherokee as Unocal's agent for liquifier. After that meeting, Eidson attempted to obtain the required approvals and negotiated with Florida Power to sell the liquifier to them. Mr. Eidson anticipated earning a substantial profit from the proposed agency arrangement, should it be implemented, but did not anticipate that there would be any delay necessitating the storage of liquifier.

According to Eidson's testimony, a second meeting later took place at Cherokee's office, and Eidson further negotiated with TECO to sell the liquifier to them. Mr. Eidson states that he never signed a written contract as to the proposed agency arrangement.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant*, 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.*, 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id., 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.*, at p. 324, 106 S.Ct. at p. 2553, 91 L.Ed.2d at p. 274. The Court is satisfied that no factual dispute remains which requires resolution at trial.

## COUNT II: BREACH OF EXPRESS ORAL CONTRACT

Defendant argues that Plaintiff has failed to show the existence of an express

contract. According to the Plaintiff, under the proposed terms of the oral contract, Cherokee was to obtain the necessary EPA approvals, and if successful, Cherokee would become the exclusive jobber for Unocal for the liquifier. Mr. Eidson testified on deposition that the only agreement reached at the initial meeting was an "agreement in principle; that it must be done." (Eidson Deposition, p. 73). According to his testimony, specific terms were agreed upon at the second meeting.

Mr. Eidson admits that any agreement was contingent on obtaining the required approvals (Deposition, p. 82), and testifies that written approval was provided to Unocal, but has not provided the written approval from regulatory agencies to the Court. Exhibit B to Defendant's motion for summary judgment states that the liquifier, when used as a fuel additive, is to be considered hazardous waste, and is subject to a litany of regulatory restrictions. (Exhibit B, dated July 22, 1985).

■ Mr. Eidson admits never signing a contract for the contemplated three-to-five year agency agreement, although he "dreamed about it ... [and] worded it out." (Deposition, p. 169–170). Mr. Eidson requested a written contract at the second meeting between the parties, and testified that Mr. Tarpley of Unocal was to bring the prepared contract for his signature, signalling that both parties intended that the alleged oral contract be put in writing. (Deposition, p. 67). When the parties intend that their negotiations be reduced to a formal writing, there is no binding contract until the writing is executed. *Mann v. Thompson*, 100 So.2d 634, 637 (Fla. 1st DCA 1958).

■ Further, any express contract claim is barred by Florida's statute of frauds, Section 725.01, *Florida Statutes*. Plaintiff has argued that since the liquifier must be disposed of within ninety days, this contract does not fall within the statute of frauds. Plaintiff seeks to have the Court construe the express oral agreement as a series of divisible contracts for each liquifier transaction. The Court disagrees with this construction. The proposed contract contemplated that the parties would establish an agency relationship, rather than perform one transaction, or a series of separate transactions, each to be completed within ninety days. Mr. Eidson admits that he was seeking a term of three years, with an automatic two-year renewal.

Mr. Eidson has testified that it was customary within the petroleum industry for the parties to bind themselves through oral contracts (Deposition, p. 76) and that Mr. Tarpley had apparent authority as the person who controlled Unocal's expense accounts to bind Unocal. According to Mr. Eidson, in the petroleum industry, simply sitting and talking about going forward with affirmative action means that the deal has been agreed upon. (Deposition, p. 76). Any such custom does not eliminate the requirement of a writing for an enforceable contract having a three-year term.

■ The Court finds that no definite terms were agreed upon at the first meeting, and the intent of the parties to reduce the alleged agreement to writing at the second meeting is established beyond doubt. The proposed contract was contingent upon first obtaining approvals from regulatory agencies to exempt the product from the requirements of hazardous waste disposal, and Defendant's Exhibit B establishes that this approval was not granted. Further, the term of the proposed contract was three years, and enforcement of this contract is barred by the Statute of Frauds. The Court grants summary judgment to Defendant as to Count II.

## COUNT III: BREACH OF IMPLIED CONTRACT

Plaintiff is seeking the reasonable value of expert, consultation and storage services of Plaintiff. Plaintiff seeks to recover in *quantum meruit* for services rendered. Plaintiff is essentially claiming that it was fraudulently induced to expend its time and resources for the benefit of Defendant, and deserves to recover for its efforts.

Charles Eidson testified that he was an experienced professional in the petroleum industry. Eidson testified he did not trust

defendant and therefore requested a written contract. The facts show that this case simply involves a business deal that was never consummated.

█ As a general rule, an action seeking to enforce an express contract and also attempting to disavow the existence of the express contract and accomplish the same purpose under *quantum meruit* is not available. *Tobin & Tobin Insurance Agency, Inc. v. Zeskind,* 315 So.2d 518, 520 (Fla. 3rd DCA 1975).

█ The test of an implied contract of employment, giving rise to the presumption that the party rendering personal services is entitled to reasonable compensation, is whether or not the services were performed under circumstances in which the parties understood and intended that compensation was to be paid. *Tobin & Tobin, supra,* at 520.

Plaintiff is seeking compensation for his personal services commencing on or about May 3, 1985. Plaintiff is also seeking storage charges for 30,000 gallons of liquifier from June 24, 1986 to the present.

█ As to the expert and consultation services provided by Plaintiff, Mr. Eidson has testified that at the outset he did not intend to seek compensation for his services, instead choosing to pursue the expectation of future profit. (Deposition, p. 685). When John Friday suggested that Mr. Eidson submit vouchers for payment, Mr. Eidson refused to do so, hoping to recover his expenses from the on-going agency relationship. Further, Mr. Eidson has admitted that he cannot document his expenses with any written record. *Quantum meruit* is available where the parties understand and intend that compensation is to be paid, but that is not the case here.

█ As to the alleged storage services, Defendant has provided invoices showing the sale of 5,900 gallons of liquifier to Plaintiff. (Exhibit D). Plaintiff has made a bare allegation that his tanks contain 30,000 gallons of liquifier stored for Defendants, but has provided the Court no support for this allegation. On July 29, 1986, Unocal invited Plaintiff to come forward

with documentation, so that it could retrieve any product shown to belong to Defendant, but Plaintiff never did so. Under these circumstances, the Court grants summary judgment to Defendant as to Count III.

## COUNT I: OPEN ACCOUNT

█ Plaintiff has sued Defendant on open account. "Open account" refers to an unsettled claim or demand by one person against another, based on a transaction creating a debtor and creditor relation between the parties.

█ Charles Eidson, President of Plaintiff, admits that he initially did not intend to charge for expert, consultation and storage services, and that those services were rendered with the expectation that the subject "deal" would go through and he would be rewarded through the profits generated. When the deal did not go through, on June 24, 1986 Eidson decided to bill for services rendered in order to recover something for the investment of time and services he had made. (Deposition, p. 685)

Mr. Eidson denied that Unocal promised to pay any storage charges. (Deposition, p. 146) Mr. Eidson also specifically denied being retained to provide the services (Deposition, p. 180), and admitted that his own profit motive was the reason the services were performed. (Deposition, pp. 99, 100) His compensation was to take the form of the three trucks, on which Cherokee's logo was to appear, that were to have been provided pursuant to the proposed contract, and the public association with a major oil company that would have put Plaintiff "on the map.". (Deposition, pp. 169, 550) Since Eidson himself initially had no intention of billing for the services provided until the proposed contract failed to be consummated, it is established beyond doubt that Defendant never agreed with him in advance to pay for such services.

Further, Mr. Eidson admits that he paid for whatever pipeline washings he picked up. (Deposition, pp. 34–5). Exhibit B–62 shows that Unocal's records support three sales of liquifier to Plaintiff, totalling 5,900

gallons. Unocal invited Plaintiff to demonstrate with documentation that Plaintiff was retaining 30,000 gallons of inventory belonging to Defendant. The letter of Mark McCandrew dated July 29, 1986 unequivocally notifies Cherokee to come forward with documentation of his assertion of storage of 30,000 gallons of inventory, and Unocal offers to retrieve any such inventory. To date, Cherokee has never complied.

Mr. Eidson admits that he did not anticipate the issue of storage, since he expected the deal go through, so that it was not discussed with Unocal at the meeting at which the alleged verbal understanding with Unocal was developed. (Deposition, pp. 685–687). Mr. Eidson stated that it was Unocal who "bogged down" and prevented the deal from going through, and on that basis seeks to create liability for storage of liquifier purchased from Unocal.

The Court does not agree with Plaintiff's reasoning, and grants summary judgment to Defendant as to Count I. Plaintiff cannot unilaterally create liability on open account. A transaction creating a debtor-creditor relationship arises out of a contract, and the record before the Court negates that possibility. Accordingly, it is

ORDERED that Defendant's motion for summary judgment is granted as to all issues and the Clerk is directed to enter a final judgment of dismissal. It is further

ORDERED that all other pending substantive motions are denied as moot.

DONE and ORDERED.