**ORTHOMET, INC., a Minnesota Corporation, Appellee,**

v.

**A.B. MEDICAL, INC., a Florida Corporation; Ray Aubrey, a Florida citizen; Creighton Beddow, Appellants.**

**No. 92–1617.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1992.

Decided April 2, 1993.

388

Mitchell A. Kramer, Jenkintown, PA, argued, for appellants.

Leo G. Stern, Minneapolis, MN, argued (Laurie J. Miller and Richard D. Snyder, on the brief), for appellee.

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BENSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Appellants A.B. Medical, Inc., Ray Aubrey and Creighton Beddow (hereinafter collectively AB) appeal from a final order entered in the United States District Court [1] for the District of Minnesota granting summary judgment in favor of appellee, Orthomet, Inc. The district court held that the statute of frauds bars AB from

---

* The Honorable Paul Benson, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

asserting a cause of action for breach of contract and that neither Minnesota nor Florida law recognizes an independent cause of action for breach of an implied covenant of good faith and fair dealing. *Orthomet, Inc. v. A.B. Medical, Inc.*, No. 4–90–691, slip op. at 12–16 (D.Minn. Feb. 5, 1992) (memorandum and order). For reversal, AB argues that the district court erred in (1) holding, as a matter of law, that enforcement of the parties' contract was barred by the statute of frauds, (2) rejecting the parties' contract as too indefinite to enforce, (3) rejecting the doctrine of estoppel, and (4) holding that there is no independent cause of action for breach of an implied covenant of good faith and fair dealing. For the reasons discussed below, we affirm the judgment of the district court.

## BACKGROUND

Orthomet is a Minnesota-based company that designs, manufactures and sells orthopaedic implants. Orthomet uses both sales agents and distributors to sell its products throughout the United States. While distributors purchase products from Orthomet to resell to customers, sales agents just solicit customers to purchase the products directly from Orthomet. Sales agents are compensated by commissions on the sales they generate. Distributors make a profit by selling the products at a hospital list price after purchasing them from Orthomet at a discount from that price.

Orthomet makes available the instruments necessary to implant its products in order to assist its sales agents and distributors in generating sales. Customers do not purchase the instruments; rather, sales agents and distributors buy them from Orthomet and then rent or lend them to the customers for use during implants. Orthomet sells the instrument sets to its sales agents and distributors at a price at or below cost. However, if a sales agency or distributorship terminates, Orthomet repurchases the instrument sets.

In 1987, Orthomet and AB orally agreed that AB would be Orthomet's sales agent in the northern part of Florida. In October 1988, a meeting took place in Florida between Tom Wiskow, Orthomet's then president, and AB. According to both sides many things were discussed at the October 1988 meeting, including Orthomet's dissatisfaction with AB's performance as sales agent. AB claims that, at this meeting, Wiskow orally promised to give AB a five-year written contract in return for an increased commitment to Orthomet's products by AB.[2] Orthomet disputes this claim but admits that the possibility of entering into a five-year written contract was discussed.[3] Orthomet claims that after the October 1988 meeting it became concerned with AB's unsatisfactory performance and decided to terminate AB as sales agent as of January 1989.[4]

On August 31, 1990, Orthomet filed a complaint in the United States District Court for the District of Minnesota seeking a declaratory judgment that no agreement existed between the parties to enter into a written agreement. AB answered the complaint and counterclaimed that Orthomet breached its oral promise to enter into a five-year written contract and that Orthomet breached its implied covenant of good faith under the Uniform Commercial Code because it failed to retain AB as sales agents for an additional five years. Orthomet then moved for summary judgment on both counterclaims.

On February 5, 1992, the district court concluded that (1) under both Minnesota and Florida law the statute of frauds bars AB from asserting a breach of contract claim, (2) the alleged oral contract asserted by AB was too indefinite to be enforced, (3) the parties' relationship was one of service, not sales, hence, the alleged agreement was not governed by the Uniform Commer-

---

**2.** Up until this time AB represented other product lines as well as Orthomet.

**3.** Although both sides agree that they never entered into a written contract, Orthomet admits for the purposes of its summary judgment mo-

tion only that Wiskow orally promised to enter into a five-year agreement with AB. Slip op. at 3 n. 1.

**4.** After termination, Orthomet repurchased all of AB's implant instrument sets.

cial Code and there was no implied covenant of good faith, and (4) neither Minnesota nor Florida law recognize an independent cause of action for breach of an implied covenant of good faith and fair dealing. The district then granted Orthomet's motion for summary judgment. Slip op. at 12–16. This appeal followed.

## DISCUSSION

### I.

■ We review a district court's grant of summary judgment de novo, *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992), and apply the same standards used by the district court. *Thelma D. by Delores A. v. Board of Educ.*, 934 F.2d 929, 932 (8th Cir.1991). The question before the district court and this court on appeal is whether the record, when viewed in light most favorable to the nonmoving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (*Anderson*); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990).

■ In order to survive a motion for summary judgment, the non-moving party need only show sufficient evidence that supports a material factual dispute that would require resolution by a trier of fact. *Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). However, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.... Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (emphasis in original).

### II.

AB first argues that the district court erred in holding the alleged contract was unenforceable under the statute of frauds.[5] AB contends that the alleged oral contract satisfies the statute of frauds because of an exception. *See Stoetzel v. Continental Textile Corp.*, 768 F.2d 217 (8th Cir.1985) (*Stoetzel*) (applying Missouri law); *General Matters, Inc. v. Penny Prods. Inc.*, 651 F.2d 1017 (5th Cir.1981) (*General Matters*); *United of Omaha Life Ins. Co. v. Nob Hill Ass'n*, 450 So.2d 536 (Fla.Dist.Ct.App.1984) (*United of Omaha*); *Olson v. Ronhovde*, 446 N.W.2d 690 (Minn.Ct.App.1989) (*Olson*). AB argues that, under both Minnesota and Florida law, if a party against whom enforcement of a contract is sought has admitted in litigation proceedings that a contract was made, the statute of frauds is satisfied.[6] AB contends that because Wiskow, at his deposition, admitted that he orally promised AB a five-year written contract if AB increased its commitment to

---

5. In district court both parties raised the issue of choice of law between Minnesota and Florida. The district court determined that the outcome would be the same under either state's law and did not decide the issue. Although the issue was not raised on appeal, we agree with the district court's conclusion. *See* Fla.Stat.Ann. § 725.01 (West 1992); Minn.Stat.Ann. § 513.01 (West 1990).

6. Minn.Stat.Ann. § 513.01 provides in part:
 No action shall be maintained, ... upon any agreement, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party charged therewith:

(1) Every agreement that by its terms is not to be performed within one year from the making thereof....

Fla.Stat.Ann. § 725.01 provides in part:
 No action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized.

Orthomet and that in a subsequent letter Orthomet promised to provide a written contract, the statute of frauds has been satisfied.

In contrast, Orthomet contends that AB has not produced any written documentation that would satisfy the statute. Orthomet further argues that neither Minnesota nor Florida has adopted the judicial admission exception to the statute of frauds. Hence, Orthomet contends the district court properly found that AB failed to raise a genuine issue of material fact as to whether the statute of frauds had been satisfied. We agree.

■ The statute of frauds requires that contracts that cannot be performed within one year be in writing and signed by the party to be charged therewith in order for the agreement to be enforceable. Fla.Stat. Ann. § 725.01 (West 1992); Minn.Stat.Ann. § 513.01 (West 1990); *see also Rockney v. Pako Corp.*, 734 F.Supp. 373 (D.Minn.1988) (applying Minnesota law); *Tanenbaum v. Biscayne Osteopathic Hosp. Inc.*, 190 So.2d 777 (Fla.1966). Additionally, an agreement to subsequently enter into a written contract must also satisfy the statute of frauds. *See, e.g., Cherokee Oil Co. v. Union Oil Co.*, 706 F.Supp. 826, 829 (M.D.Fla.1989), *aff'd mem.*, 901 F.2d 1114 (11th Cir.1990); *see also Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 342 (2d Cir.), *cert. denied*, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963). "[A] contract that is unenforceable by reason of the statute cannot be made indirectly enforceable by promising to execute a sufficient memorandum or otherwise satisfy the requirements of the statute." 2 Arthur L. Corbin, Corbin on Contracts § 283, 31 (1950); *see also*, 3 Samuel Williston, Williston on Contracts § 524A, 692 (1960) ("enforcement of such an agreement is tantamount to taking the main contract out of the Statute").

The cases AB cites do not support the proposition that a contract that otherwise does not satisfy the statute of frauds is enforceable if the party against whom enforcement of a contract is sought has admitted that a contract was made. For example, we note that the court in *Stoetzel* was applying Missouri law, and did not reach the suggested conclusion. After conducting a review of Missouri law the court in *Stoetzel* held that in light of an apparent conflict in Missouri case law on whether a judicial admission of an oral contract precludes a party from asserting the statute of frauds as a defense, it was unwilling to say that the district court misconstrued the applicable law. 768 F.2d at 222.

■ A review of Minnesota law does not reveal any case which has expressly adopted the judicial admission exception to the statute of frauds. Contrary to AB's assertion, in *Olson* the court did not address the statute of frauds with the framework of a judicial admission theory. Rather, the court's statute of frauds analysis in *Olson* relates only to equitable estoppel and ratification principles which are entirely separate legal theories. 446 N.W.2d at 692.

Florida case law addresses the judicial admission exception only within the context of Article 2 of the Uniform Commercial Code. *General Matters*, which was cited by AB for support, dealt with the sale of goods and thus the court's analysis was based on Article 2 of the Uniform Commercial Code. 651 F.2d at 1019–20. AB has acknowledged, however, that Article 2 is not applicable to this case. *United of Omaha*, which AB also cited for support, dealt with the statute of frauds only within the context of an estoppel claim, which has no bearing on the judicial admission exception. 450 So.2d at 539.

■ Furthermore, assuming arguendo that the judicial admission exception had been adopted by either Minnesota or Florida, there is nothing in the record to indicate that Orthomet admitted that any contract, oral or written, was reached with AB. Therefore, we hold that the district court correctly found the alleged oral contract unenforceable under the statute of frauds.[7]

---

**7.** AB also argues that the district court erred in holding the alleged oral contract was too vague

to be enforced. Given our statute of frauds analysis, we need not reach this issue. Con-

### III.

AB next argues that the district court erred in holding that Orthomet was not estopped from asserting the statute of frauds defense. AB contends that Wiskow knew that AB would rely on its promise and promised at the October 1988 meeting to provide AB with a five-year written contract if AB increased its commitment to Orthomet. AB asserts that, in reliance on this promise, it increased its commitment to Orthomet by holding a sales meeting at which AB specifically told its salespeople to concentrate their efforts on selling Orthomet's products. AB argues that this increased commitment to Orthomet caused a deterioration in the compensation which AB received from other product lines they represented. Orthomet argues that AB did not plead estoppel in district court and AB failed to show any prejudice resulting from Orthomet's alleged conduct.

 Although AB did not plead estoppel in district court, the district court did address and rejected the issue of estoppel and we agree with the district court's conclusion. *See* slip op. at 7–8. Detrimental reliance is an essential element of estoppel. *Lyng v. Payne*, 476 U.S. 926, 935, 106 S.Ct. 2333, 2339, 90 L.Ed.2d 921 (1986). Moreover, without a showing of prejudice, estoppel cannot be invoked to preclude a party from asserting the statute of frauds as a defense. *See, e.g., Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn.1992); *Lunning v. Land O' Lakes*, 303 N.W.2d 452, 458 (Minn.1980); *see also First Realty Inv. Corp. v. Gallaher*, 345 So.2d 1088, 1090 (Fla.Dist.Ct.App.1977). After a careful review, we find the record devoid of any evidence of prejudice to AB resulting from Orthomet's alleged conduct. Thus, we hold that the district court correctly held that Orthomet was not estopped from asserting the statute of frauds as a defense.

tracts too indefinite or vague are not enforceable. *See, e.g., David v. Richman*, 568 So.2d 922, 924 (Fla.1990) (where an alleged contract omitted essential term, no contract was formed); *King v. Dalton Motors, Inc.*, 260 Minn.

### IV.

Finally, AB argues that the district court erred in holding that there was no independent cause of action under either Minnesota or Florida law for breach of an implied covenant of good faith and fair dealing. AB argues that Orthomet promised AB a five-year written contract and that Orthomet failed to act in good faith to deliver the contract as promised. Orthomet argues that the district court correctly held that neither Minnesota nor Florida recognize an independent cause of action for breach of an implied covenant of good faith and fair dealing.

 Although AB did not plead this claim in district court, the district court decided the claim anyway. slip op. at 15–16. After a review of the record and the applicable law, we agree with the district court that, under either Minnesota or Florida a cause of action for good faith and fair dealing cannot not exist independent of the underlying breach of contract claim. *See International Travel Arrangers v. NWA, Inc.*, 723 F.Supp. 141, 152–53 (D.Minn.1989) (reviewing Minnesota cases barring such action); *Wild v. Rarig*, 302 Minn. 419, 234 N.W.2d 775, 790 (1975) (holding that Minnesota does not recognize such a cause of action); *Cf. Kelly v. Gill*, 544 So.2d 1162, 1164 (Fla.Dist.Ct.App.1989) (an independent cause of action for breach of good faith and fair dealing is not recognized in Florida, at least where wrongful dismissal is claimed). Therefore, we hold that because the alleged underlying breach of contract claim was barred by the statute of frauds, no cause of action for breach of an implied covenant of good faith and fair dealing can survive independently.

Accordingly, the judgment of the district court is affirmed.

124, 109 N.W.2d 51, 52 (1961) (an alleged contract which is so vague, indefinite, and uncertain as to make its meaning speculative is void and unenforceable).