MARTHA A. SHY, R. F. SHY, ANNA L. FERGUSON and MOLLIE MC-CORKLE, Appellants, v. LEVI LEWIS.—12 S. W. (2d) 719.

Division One, December 31, 1928.

*George F. Longan* and *Jones & Jones* for appellant.

690

*D. S. Lamm* for respondent.

LINDSAY, C.—This is a suit for damages for the alleged breach, by defendant, of a contract for the purchase of a farm owned by the plaintiffs. At the close of the plaintiffs' case the court sustained defendant's demurrer to the evidence. In due course plaintiffs took their appeal to the Kansas City Court of Appeals.

The controlling, and indeed the sole, question considered by the Court of Appeals was whether the signed memorandum of the contract met the requirements of the Statute of Frauds; and upon that question, the Court of Appeals held that the ruling of the trial court was erroneous, reversed the judgment, and remanded the cause; but, deeming its decision to be in conflict with the decision of the St. Louis Court of Appeals, in Mason v. Small, 130 Mo. App. 249, ordered the cause transferred to this court.

The farm in question was one of 395 acres, situated in Morgan County, and came to the plaintiffs by inheritance from their father, T. C. Shy, deceased. The land constituting the farm was sold at an auction sale, held on the farm, on the 6th day of October, 1921. The sale was advertised by printed hand-bills which described the farm as one of 395 acres, situated two and one-half miles southwest of Otterville. Some other details of the description contained in the advertisement will be noticed later. The terms of sale, according to the testimony, were stated at the sale by the auctioneer, as requiring one thousand dollars or fifteen hundred dollars down, and one thousand dollars a year thereafter, the deferred payments to bear five per cent interest. The defendant bid in the land at the sale, for $62.50 per acre. The testimony was that no memorandum of the sale was made at the time by the auctioneer; but, on October 8th, two days after the sale, the defendant, and plaintiff Frank Shy, who, according to his testimony, represented the other plaintiffs as well as himself, signed the following memorandum:

"Contract to Farm of T. C. Shy by Frank Shy to Levi Lewis. Terms: $4000 down when abstract is delivered and principal of $20,687.50 to run five years at five per cent interest, a thousand or more at each interest paying date on $20,687.50 and if place is sold as above stated or any part or all may be paid cash down at time of sale.

"LEVI LEWIS,<br>"FRANK SHY."

On October 8th, the defendant and his wife also executed their note for $1500 in favor of Frank Shy, due one day after date, and at five per cent interest per annum. This note had marked upon it: "First payment on farm, T. C. Shy's." Abstracts of title to the land were at about the same time delivered to the defendant, and these were submitted by him to his lawyers who made many requirements in respect to the title. A firm of abstracters was employed to meet such requirements. The requirements were not all fulfilled until some time in August, 1922; and when the abstracts were tendered to defendant, he refused to accept the same, saying, "It had been too long." At some time not long thereafter, plaintiffs tendered a deed, which defendant refused.

There was evidence tending to show that plaintiff delivered possession to defendant of a part of the land; but the full circumstances as to this are not clearly shown. It appears from the evidence that for a number of years defendant had rented a part of the land; that after the signing of the memorandum of the land above mentioned, the key to the house on the farm was delivered to defendant. There is testimony also that in the fall of 1922, after the deed was tendered to defendant and refused by him, plaintiffs received some money from defendant as rent for the land. The testimony seems to be to the effect that defendant had possession of the land except a part spoken of as the "south pasture;" also that after refusal of the deed tendered him, defendant wrote plaintiff Frank Shy, that he (defendant) had put the key where he got it, and that Frank Shy found it in the door of the house. There was also testimony admitted, over defendant's objection, that at some time in the fall following the signing of the memorandum, defendant distributed printed circulars advertising the farm for sale, by himself as owner.

Counsel for plaintiffs in their brief argue that where a vendee takes possession, and pays a part of the purchase price, and receives revenue from the property, it is sufficient to take the case out of the Statute of Frauds, and call attention to Walker v. Owen, 79 Mo. 563; Reynolds v. Reynolds, 45 Mo. App. 622; Tatum v. Brooker, 51 Mo. 148. As to the nature of possession of the farm by defendant and the receipt of revenue therefrom, we have stated

what is shown by the evidence as definitely as can be determined from the record.

Under the rule followed in a long line of decisions, the question of part performance of the contract, is not one of serious importance, in the instant case. This is an action at law, and not a suit in equity. In Nally v. Reading, 107 Mo. 350, the question of whether a part performance took the case out of the Statute of Frauds was fully considered and determined, and therein it was said, at page 355: "Whatever may be the rule in equity as to the doctrine of part performance, that rule has no place in an action at law, as in the present instance." That rule has been uniformly followed. [Sursa v. Cash, 171 Mo. App. 1. c. 403; Aylor v. McInturf, 184 Mo. App. 691; Hillis v. Rhodes, 205 Mo. App. 1. c. 449; Davis v. Holloway, 295 S. W. 1. c. 108; Shacklett v. Cummins, 178 Mo. App. 1. c. 311.] The Nally case is cited with approval in Reigart v. Coal & Coke Co.. 217 Mo. 142, 163.

Counsel for plaintiffs also make the contention that as the land was sold at auction, and was advertised beforehand, the advertisement of the sale formed a part of the contract of sale, and call attention to Briggs v. Munchon, 56 Mo. 467, and Springer v. Kleinsorge, 83 Mo. 152. The general rule is stated as follows. 27 Corpus Juris, page 293, section 366: "An auctioneer is the agent of both parties to the sale for the purpose of making and signing a memorandum of contract of sale. A memorandum signed by him is sufficient to charge both the vendor and the purchaser under the statute of frauds, provided it is complete and sufficient as to contents, and provided it is signed by him at a time while his agency still continues." By the same authority however, "the agency of the auctioneer enabling him to sign the memorandum so as to bind the buyer ends with the sale; a memorandum made by him subsequently is insufficient for this purpose, unless the purchaser accepts the memorandum or otherwise assents to the sale." [27 C. J. 265, sec. 313.]

The cases of Springer v. Kleinsorge, and Briggs v. Munchon, were both cases in which the auctioneer at the time of the sale executed, as agent for both parties, a memorandum sufficient to comply with the Statute of Frauds. In the Briggs case the memorandum was made by the clerk of the auctioneer, at the time of the sale, and it was prefaced by the advertisement posted in the auctioneer's book. The advertisement showed the lots sold, were sold at the sale of "lots of the Briggs estate," and that this was a subdivision situated "on both sides of the Clayton Road, a short distance west of the intersection of the Clayton and Manchester roads, about half a mile west of the city limits, and a short distance northeast of the Laclede

race track subdivision." The memorandum made by the auctioneer showed by number the particular lot purchased by Munchon.

The case of Springer v. Kleinsorge was a case which in its facts was a parallel to the Munchon case. The auctioneer's memorandum was made by his clerk under the eye of the auctioneer, at the time of the sale, and in the presence of the purchaser, and showed the numbers of the lots, and price, and name of the purchaser. The memorandum made express reference to the fact of the auction sale of the property constituting the subdivision of which the lot purchased was a part. The advertisement was made a part of the memorandum by clear reference thereto.

In this case the evidence is positive that the auctioneer himself made no memorandum at all, and that the memorandum heretofore set out was made and signed by plaintiff Frank Shy and defendant, two days after the sale. This memorandum makes no reference to the advertisement, and is not, as in the cases mentioned, attached to, or made a part of, the advertisement of the sale; nor did the auctioneer have anything to do with the preparation of it. The result of the foregoing is that the case turns upon the terms of the memorandum; and the only real question in the case, as it now stands, is whether the memorandum meets the requirements of the Statute of Frauds.

Where land is sold, a description of the land to be sold is essential to the validity of a contract, under the Statute of Frauds; but it is generally held that it is not necessary that the description should be given with such particularity as to make a resort to extrinsic evidence unnecessary. Out of the infinite variety of descriptions involved in cases of this kind a few general rules have been evolved, which are to be applied as tests in the given case. The following statement appears in 20 Cyc. 270: "In general the description of the land in a memorandum of a contract for the sale of lands must be sufficiently definite to identify the land by its own terms or by reference in it to external standards in existence at the time of the making of the contract and capable of being determined beyond dispute. Where, however, the memorandum on its face appears to refer to a definite parcel of land, the description need not be such as to render entirely needless a resort to extrinsic aid to identify the property; it is enough if the description be sufficient, with the assistance of external evidence, to fit and comprehend the property which is the subject of the transaction to the exclusion of all other property. Thus a description of the land by a familiar local appellation which refers to a definite tract may be sufficient." The requirement in this particular is stated in 27 Corpus Juris, page 270, section 321 as follows: "The land must be so described that it can be identified with reasonable certainty. The writing must disclose a

694

description which is itself definite and certain or it must furnish the means or key by which the description may be made certain and identified with its location on the ground. In other words the contract, note, or memorandum is insufficient where parol evidence is necessary to supply the description, or part thereof, to determine and define the subject-matter, and to show the intention and agreement of the parties as to the subject-matter; and it is sufficient as regards subject-matter where it furnishes a sufficient foundation for the admission of extrinsic evidence to apply the description and by means of such evidence the particular tract of land which is the subject-matter of the agreement may be identified and located to the exclusion of all others.''

Another applicable rule is thus stated in 25 Ruling Case Law, page 649, section 282: ''If an insufficient description is given or there is no description, oral evidence is not admissible in aid of the memorandum, because the court will never receive such evidence both to describe the land, and then to apply the description. This rule is fully applicable to auction sales.'' Again, in 27 Corpus Juris, page 273, section 324, we find the following: ''An omission of the county, state, and city, town, or village wherein the property is located renders the writing insufficient where it contains nothing from which the omitted statement may be inferred and extrinsic evidence is necessary for the purpose of supplying, as distinguished from applying, the description. Such an omission, however, is not always fatal. The description may state other facts from which the property may be located and identified with sufficient certainty to satisfy the Statute of Frauds.'' Again, it has been held that ''a description of the land by a familiar local appellation which refers to a definite tract may be sufficient.'' [27 C. J. 272, sec. 323, citing Anderson v. Hall, 188 S. W. 79.]

The memorandum in this case contains no description other than that embodied in the words ''farm of T. C. Shy,'' and it contains no mention of any other external fact; no mention of county or state, or of proximity of the farm to any town, or known place; and the number of acres is not stated; nor can the number of acres be calculated from the contents of the memorandum, nor is there reference to any auxiliary writing. The farm, at the time the memorandum was made, was not the property of T. C. Shy, but was owned by the four plaintiffs as the heirs of T. C. Shy. No evidence was introduced for the direct purpose of showing there was a farm generally known as the T. C. Shy farm, or that the farm in controversy was popularly and generally so known. Upon the direct examination of the auctioneer, he was asked if he ''remembered selling the farm known as the T. C. Shy farm near Otterville,'' and he answered that he did. The wit-

ness DeHaven was also asked on his direct examination if he was "acquainted with what is known as the Shy farm," and he said that he was. The inquiry went no farther than that. The advertisement of the sale introduced by defendants began with the words: "Public Sale to Settle the T. C. Shy Estate of 395-acres-land-395." It then mentioned 240 acres, accompanied with a description of the character of crops thereon, and improvements upon the 240 acres. Following that, was the statement: "155 acres known as the C. E. Messerly farm."

Among the numerous cases cited by the respective counsel, sufficient mention has been made of Springer v. Kleinsorge, and Briggs v. Munchon. Counsel for plaintiffs cite Smith v. Wilson, 160 Mo. 657, which was a suit by the purchaser, for specific performance. In that case the description was as follows: "Five acres of land in S. W. corner of N. E. 1-4 Sec. 5-27-20, Linn Co., Mo." This was held to be a sufficient description. In that case, l. c. 666, it was said: "The rule is that the land need not be fully and accurately described in the paper so as to be identified from a mere reading of the paper. But the writing must afford the means whereby the identification may be made perfect and certain by parol evidence." The description therein was held to be within that rule.

In Parks v. People's Bank, 31 Mo. App. 12, the description, in a receipt, was as follows: "Received of Charles H. Parks the sum of four hundred dollars for one-half of my undivided one-fifth interest, or half of all my real estate left to me by my father." This was held sufficient as meaning the lands inherited from his father, Wm. M. Parks, and within the rule that "the subject-matter of the sale may always be identified by reference to an external standard, and need not be in terms explained." It being further said, however, that the subject-matter or terms must be "ascertained from the writing itself or by reference in it to something else."

In Black and Snyder v. Crowther and Andriano, 74 Mo. App. 480, the suit was for damages for breach of contract. The description was embodied in a proposal to give "$800 in cash for your joint equity in five and one-half acres of land held by you and us." This was held sufficient, under the rule as stated therein: "The land need not be fully and actually described in the paper so as to be identified from the mere reading of the paper, but the writing must afford the means whereby the identification may be made certain and perfect by parol evidence." In that case it was said, at page 484: "We do not say it would make any difference, yet it would be a far-fetched assumption, to state that the parties held a joint equity in more than one five and one-half-acre tracts. Unless we assume that they did, parol testimony can identify, from the means afforded by the paper, the particular land mentioned. Extrinsic evidence can

apply the description to the proper land by following the suggestions contained in the paper and without any other aid."

Attention is called to Wilcox v. Sonka, 137 Mo. App. 54, an action for breach of contract. In that case the description was "my farm of 160 acres in Linn County, Texas." This was held sufficient on the theory that the words "my farm" denoted ownership, and also implied ownership of but one farm of 160 acres; and, that a surveyor with the contract in hand could go to Linn County, Texas, and locate the land.

Attention is called to Kriling v. Cramer, 152 Mo. App. 431. The description there was, "about 160 acres of land now occupied by said Milton Cramer, described as follows: 'All of the land south of the county road, except 40 acres adjoining the Thoma Place, on the north and west.'" Thus, there was reference to several external matters—the fact that the land was then occupied by Cramer and was all south of the county road, except forty acres adjoining the Thoma place on the north and west.

Counsel for defendants have called our attention to Anderson v. Hall, 273 Mo. 307; Cement & Material Co. v. Kreis, 261 Mo. 160; White v. Watkins, 23 Mo. 423; Kelly v. Thuey, 143 Mo. 436; Johnson v. Fecht, 185 Mo. 343; Reigart v. Coal & Coke Co., 217 Mo. 142; Fox v. Courtney, 111 Mo. 147; Ringer v. Holtzclaw, 112 Mo. 519, and other cases, among them Mason v. Small, 130 Mo. App. 249, wherein it was held that a description, "Two hundred acres of land, more or less, known as the L. N. Stewart farm," without statement of the county or state, was held insufficient.

In Bates v. Harris, 144 Ky. 399. 36 L. R. A. (N. S.) 154, there is an extensive annotation upon the question of sufficiency of description based upon use of a local appellation. Under the cases there referred to, from many jurisdictions, the conclusion of the annotator is, "that where the description of the subject-matter is such that, by the aid of extrinsic evidence, it may be applied to the exact property as to which the minds of the parties met, it would be sufficient; but that where the local appellation used does not supply the description, parol evidence would not be admissible, and the description would be insufficient under the statute of frauds." In a considerable number of these cases the local appellation given was further explained in the memorandum by reference to some place, or characteristic.

In Anderson v. Hall, 188 S. W. 79, the description of the land was to be gathered from a series of letters and telegrams passing between the parties, wherein the place was referred to as the "Joe Shelby or Anderson farm," and as the "800-acre farm near Aullville," and as the "800-acre farm in Lafayette County, Missouri." The

correspondence connected these descriptions as all referring to the same farm. In that case the description was held sufficient. Witnesses testified that a place containing 800 acres and situated near Aullville in Lafayette County, Missouri, was popularly and generally known as the Joe Shelby, or Anderson, farm. The descriptions into which the various letters and telegrams merged, showed the number of acres, the county and state, and the town near which the farm was situate. In that case it was said by Division Two of this court, l. c. 81: "It was, of course, incumbent upon the plaintiff to establish that the subject-matter of the alleged contract, that is, the land which both parties were contracting in reference to, was generally and familiarly known in that community by the popular name or appellation 'the Joe Shelby farm or Anderson farm.' She must show that it was so generally and commonly known and recognized by that name that it could be readily and beyond dispute identified when so referred to or described." It was held that upon that question there was no evidence contradictory of that offered by the plaintiff.

The memorandum in the case at bar and the evidence fall short of the certainty of description shown in the case last mentioned, or indeed in the great majority of the cases to which reference has been made herein, and in most other cases which we have examined. To sustain the memorandum it would be necessary to assume from it that the words "farm of T. C. Shy" were used by the parties as a local appellation, and find also from the evidence that it was popularly and generally so known. There is insufficiency of the memorandum and of the evidence, to so hold, and the trial court was warranted in sustaining the demurrer to the evidence.

The judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by LINDSAY, C., is adopted as the opinion of the court. All of the judges concur.