**Charles M. COLEMAN and the Riverton Uranium Corporation, a corporation, Appellants,**

v.

**MOUNTAIN MESA URANIUM CORPORATION, a corporation, Appellee.**

**No. 5423.**

United States Court of Appeals Tenth Circuit.

Dec. 28, 1956.

Albert W. Dilling, Chicago, Ill. (Spence & Hill, Riverton, Wyo., were with him on the brief), for appellants.

Edward E. Murane, Casper, Wyo. (Richard R. Bostwick, Casper, Wyo., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and PICKETT, United States Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Charles M. Coleman and the Riverton Uranium Corporation against San Juan Uranium Corporation and Mountain Mesa Uranium Corporation for a specific performance of a written contract between San Juan

and Mesa to which appellants were not parties. They sought to maintain the action as third party beneficiaries to that contract. The appeal is from an order of the Court sustaining Mesa's motion for a summary judgment for dismissal of counts one and two of the amended complaint containing three counts. The trial Court did not sustain a similar motion by San Juan. San Juan has not entered its appearance on appeal. The questions for consideration are whether the record before the trial Court presented a disputed issue of fact, that is whether appellants were third party beneficiaries and, if so, whether there were disputed issues needing resolution to determine whether appellants were entitled to recover against the defendants.

A somewhat detailed statement of facts is necessary to bring the issue on appeal in focus. On May 2, 1955 San Juan had entered into a written contract with Mesa for the acquisition from Mesa of a large number of uranium mining claims. The contract contained many provisions usually found in such arrangements for a mining venture. It required San Juan to develop the properties and to pay to Mesa the considerations reserved to it therein. The contract also contained a provision for termination upon violation of covenants and obligations assumed by San Juan.

On July 30, 1955, appellant Coleman and San Juan executed an agreement in which San Juan granted Coleman an option to acquire all of San Juan's rights in the mineral claims under its contract with Mesa. One of the conditions of the agreement was that San Juan would procure a modification and revision in some respects of some of the provisions of the contract of May 2, 1955, between San Juan and Mesa, which revisions need not be specifically set out. These revisions were effectuated and were embodied in a supplemental contract between San Juan and Mesa dated September 7, 1955. Coleman was not mentioned in this revised agreement. Thereafter San Juan advised Coleman that the contract between San Juan and Cole-man of July 30, 1955, was abrogated. This action then followed.

The complaint is lengthy and verbose. It alleges in general terms that Mesa knew of the contract between Coleman and San Juan and knew of his interest; that the modifications of the contract of May 2, 1955, provided for in the contract of July 30, 1955, were for Coleman's benefit; and that Mesa agreed thereto by modifying its contract of May 2, 1955, with San Juan for the benefit of Coleman. It was alleged that the contract of July 30, 1955, was ratified by San Juan's Board of Directors and that thereafter Coleman assigned his interest therein to the other appellant Riverton Uranium Corporation.

Count two alleged a conspiracy between San Juan and Mesa to injure Coleman and Riverton by defeating their rights under the July 30, 1955, contract. It alleges that San Juan wrote a letter to the Riverton, Wyoming Ranger, a newspaper of general circulation, which it was intended to be published, and that it was published, to the effect that San Juan had not dealt away its interest in the claims to anyone; also that respondents attempted to make it appear that San Juan was in default under its revised contract with Mesa; that instead of honoring appellants' rights under the revised contract they have colluded in turning the mineral rights into a profitable venture for themselves.

The motion for summary judgment came on for hearing on the pleadings, depositions by appellants and exhibits consisting of letters and the newspaper article in the Riverton, Wyoming Ranger. There is no disputed issue of law in the case. The sole question is whether from the pleadings and uncontroverted facts before the Court it can be said there is no genuine issue of fact.

The scope of a motion for summary judgment in our judicial system is clear and well defined. It is clearly and simply stated in Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. as follows:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In Associated Press v. United States, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013, the Supreme Court cautioned by stating "We agree that Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." We have ourselves discussed the functions and scope of summary judgment in a number of decisions.[1]

The Court apparently did not base its judgment on its conclusions that there were no disputed issues of fact.[2] In fact, its letter stating its reasons for sustaining the motion indicates that there were disputed issues and rights involved and that the Court entered the summary judgment because it believed the parties would execute the contract of settlement they had worked out in the Court's Chambers. In its letter the Court offered to give whatever time was "necessary in assisting them in going over this agreement, if necessary, in order to protect their rights in the premises."

The judgment will, however, not be disturbed because of an erroneous reason therefor, if in fact there is no genuine issue of fact presented by the record before the Court. Mesa's defense was that it had no knowledge of the contract between San Juan and Coleman. Its position is that the first knowledge it had obtained of such contract was on October 24, 1955, which was subsequent to the time when San Juan had forfeited its rights under the revised contract, and that there is no evidence in the record leading to any other conclusion. But the deposition of San Juan's President which was before the Court states that he had discussed with Mesa's President selling out to Coleman in July, 1955. He also testified that later when Coleman's attorney was negotiating for a revision of the contract of May 2, 1955, he told Mesa that these revisions were necessary before Coleman would take the mineral rights. Mesa's President in a deposition replied in answer to a question whether Mesa had been advised on August 9, 1955, by San Juan's President and Coleman's counsel that the San Juan-Mesa contract was to be taken over by a Chicago group which required some revisions and that revision in that contract was needed to protect the people who would invest money and take time to develop the properties, "We had some discussion about the fact that there would have to be some revision in the contract because San Juan felt there were in-

1. See Schreffler v. Bowles, 10 Cir., 153 F.2d 1; Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568; Safeway Stores v. Wilcox, 10 Cir., 220 F.2d 661.

2. The Court in advising the attorneys that it had directed the entry of a summary judgment of dismissal as to Mesa gave therefor as its reasons the following:
    "I have taken several matters into consideration in entering this order, viz:
    • (a) the parties drafted an agreement in my chambers which appeared to be satisfactory to both plaintiffs and defendants with the exception of one or two minor changes; (b) I am advised by Mr. Murane that a number of suits have been filed in Fremont County, the object of which is to forfeit a number of mining claims, many of which constitute the subject of this controversy; (c) I have reason to believe, based upon the statements of counsel, that the agreement drafted in my chambers will be executed by the parties, which will terminate this litigation. I want to reassure counsel that I will give whatever time is necessary in assisting them in again going over this agreement, if necessary, in order to protect their rights in the premises.
    "I am not unmindful that motions for summary judgment should be sparingly granted but I believe it to be to the best interest of all the parties to protect the mining claims in Fremont County in making this decision."

equities in the contract and it would need to be revised before they could sell the mining contract." He further testified that " * * * San Juan was to prepare a letter of these changes that would meet the approval of the people and send them to us for our approval; * * *" San Juan's President in his deposition was asked if he told Mesa's officials whom Coleman's counsel was representing. His answer was "I believe so." Mesa's own officials admitted that at least some time after the time San Juan's officials indicate they told whom Coleman's attorney was representing, it knew of Coleman's representations in the revision of the San Juan-Mesa contract. Asked when he knew the counsel was representing Coleman, Mesa's President replied "That was the latter part of * * * 1955." Asked to fix the time more definitely, he replied "I am almost sure it was August 29 but I am not positive * * *"

We have not attempted to set out all the allegations of the complaint alleging that Mesa knew of Coleman's interest in the revision of the contract between it and San Juan and that such revisions were made for his benefit enabling him to complete his contract with San Juan nor all such testimony in the depositions and exhibits. We think what has been set out clearly indicates there was an issue of fact which made summary judgment inapplicable. We are not unmindful that the allegations of the complaint are very general and in some instances amount to statements of conclusions rather than precise statements of ultimate facts. It may be that the petition was subject to a motion for a more definite statement of facts under Rule 12(e), but no such motion was made. As stated by us in United States v. Sinclair Refining Co., 10 Cir., 126 F.2d 827, 831,

"The deficiencies * * * were not such as to call for that action, at least without attention being first directed to them and an opportunity afforded for their correction." [3]

It is further contended that it is clear that no recovery can be had by appellants in any event because the contract between Mesa and San Juan on which appellants' rights are predicated has been abrogated because of San Juan's failure to perform its obligation thereunder. San Juan also made the contention that the contract between it and Coleman was abrogated because of Coleman's failure to pay $2,500 as required therein. It is true that Coleman did not pay the $2,500 on the due date. He did, however, remit the $2,500 which apparently was first accepted and then returned.[4] There is involved in the case a question of waiver of the time of the payment of the $2,500, so that the contract could not be terminated because payment was not made strictly as required by the contract.

Mesa's contention that its contract with San Juan was terminated as well as San Juan's contention that its contract with Coleman had been terminated also overlooks the fact that count two charges San Juan and Mesa with a conspiracy to deprive appellants of their rights as third party beneficiaries by collusively agreeing to wrongfully terminate the two contracts. We think the allegations of count two are sufficient to charge such a conspiracy which appellants had a right to establish by competent proof if they could. Also the facts set out in the depositions are to say the least somewhat conflicting, at least enough so to make summary judgment inapplicable. No attempt will be made to set out such facts or analyze the implications which might in the absence of other testimony be drawn therefrom.

---

3. See also Leimer v. State Mutual Life Assurance Co., D.C., 108 F.2d 302; Sidebotham v. Robison, 9 Cir., 216 F.2d 816.

4. San Juan's letter to Coleman of October 19, 1955, states: " * * * I am enclosing a cashier's check drawn on the United States National Bank of Denver in the amount of $2,500. I am returning your tender in this manner inasmuch as I feel that you would not want me to take the risk of sending cash in this amount through the mails." The inference is that Coleman did not send cash when he made his tender of payment and that had his tender not been accepted the original remittance could have been returned.

A final contention by Mesa is that Coleman may not maintain this action because it is within the Statute of Frauds. This contention is not well taken. The Wyoming Statute, W.C.S.1945, § 5–101, relied on in pertinent part provides that "In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith." Then the Statute sets out the kind of agreements which must be in writing including contracts for the sale of real estate. The contract sued upon was signed by both Mesa and San Juan. If in fact Coleman was a third party beneficiary he could sue for the enforcement of his rights under the contract, although he was not a party thereto or was not mentioned therein. The right of a third party beneficiary to maintain an action upon such contract under such circumstances is well recognized by all the authorities.[5] Since the parties sought to be charged on the contract both signed, it was not necessary for Coleman, the third party beneficiary to have signed the contract.[6]

Reversed.

5. Hamill v. Maryland Casualty Co., 10 Cir., 209 F.2d 338; and authorities there cited.

6. 49 Am.Jur., Statute of Frauds, §§ 337, 384, 387; 37 C.J.S., Frauds, Statute of, §.206; 25 R.C.L., Statute of Frauds, §§ 305, 306.