**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 10 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

C-470 JOINT VENTURE, a Colorado
general partnership and GERALD J.
STARIKA,

          Plaintiffs-Counter-Defendants -
          Appellants,

    v.

TRIZEC COLORADO, INC., a Delaware
corporation,

          Defendant-Counter-Claimant -
          Appellee.

No. 97-1478

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 96-WY-1612-CB)**

---

Wayne B. Schroeder (Jody Harper Alderman, with him on the briefs), Grimshaw
& Harring, P.C., Denver, Colorado, appearing for Appellants.

John Lawrence Hamil (Michelle W. Stern, with him on the brief), Hamil
Professional Corporation, Denver, Colorado, appearing for Appellee.

---

Before **TACHA**, **BARRETT**, and **HENRY**, Circuit Judges.

---

**TACHA**, Circuit Judge.

This diversity action between plaintiff-appellant C-470 Joint Venture ("Joint Venture"), a Colorado corporation, plaintiff-appellant Gerald Starika, a Colorado resident, and defendant-appellee Trizec Colorado, Inc., a Delaware corporation, presents a question regarding the enforceability of a covenant to convey a property interest between Trizec and plaintiffs' predecessor in interest. The district court found the covenant enforceable on summary judgment and, after trial, awarded damages to Trizec. We affirm.

In 1982, Trizec and The Good Partnership, a Colorado limited partnership, entered into a dissolution and distribution agreement that terminated Park Meadows Ltd., a limited partnership between the two entities. The entities had formed Park Meadows in large part to develop a regional shopping center. Pursuant to the dissolution agreement, both Trizec and The Good Partnership took a portion of the property owned by Park Meadows. Trizec received the future shopping center site, while The Good Partnership received surrounding lands, referred to as the "Adjoining Lands." All land was located near the proposed Colorado Highway 470 ("C-470"), and the parties contemplated the construction of an interchange on the lands distributed to The Good Partnership. On April 7, 1982, Trizec and The Good Partnership executed and subsequently recorded a Covenants Agreement, which provides:

> 3. Additional Covenants. The Good Partnership hereby declares the Adjoining Lands, or so much of them as shall be specified below, to

be subject to the following covenants and burdens:

. . . .

(d) For a period of fifteen years after the date of this Agreement, the Good Partnership will, from time to time at Trizec's request, convey and/or dedicate from the Mercy Tract and the Miscellaneous Tracts (as described in Exhibit B attached hereto) such easements, rights-of-way or other accessways (aggregating not more than five acres) as shall be necessary or required for the construction and operation of either a full diamond or half diamond interchange at South Yosemite Street and Colorado Highway 470. Such conveyance or dedications shall be made without charge;

. . . .

The provisions of subsections 3(a) through 3(e) above shall be deemed covenants running with title to the Adjoining Lands, and shall be binding upon the Good Partnership and its successors in title to the Adjoining Lands. The benefits of, and all rights of enforcement with respect to, subsections 3(a) through 3(e) shall inure solely to Trizec and its successors in title to the Town Center Tract.

Appellants' App., Vol. III, at 01176-79.

In 1983, appellant Joint Venture acquired part of the Adjoining Lands, including Parcel B, the land containing the crossing of Yosemite Street and C-470. In a subsequent agreement with Trizec, Joint Venture expressly acknowledged that Covenant 3(d) from the 1982 Covenants Agreement ran with the title to Parcel B. Joint Venture quit-claimed an eighteen percent interest in its land to appellant Gerald Starika. On November 27, 1995, Trizec requested in writing that plaintiffs perform Covenant 3(d) by conveying a right-of-way for an interchange to Douglas County. A legal metes and bounds description of a right-

of-way covering approximately 2.2 acres accompanied the letter. Plaintiffs refused to perform, claiming that Covenant 3(d) was unenforceable.

In May 1996, Douglas County began condemnation procedures on the 2.2 acres. The condemnation action is still pending, though Douglas County has obtained possession of the property and constructed the access ramp by depositing $199,800.50 with the Douglas County District Court.[1] On July 2, 1996, plaintiffs filed the instant action in federal district court seeking a declaratory judgment holding the covenant unenforceable under Colorado law. Defendants counter-claimed for specific performance and sanctions. The district court granted summary judgment on the validity and enforceability of the covenant. A two day bench trial followed. The district court found plaintiffs had breached the covenant but, because the county had completed the interchange and the condemnation proceeding was ongoing, it awarded Trizec damages incurred as a result of the condemnation proceedings rather than specific performance. The court also denied Trizec's request for sanctions. Plaintiffs appeal the district court's summary judgment ruling on the enforceability of the covenant and further assert that the district court's judgment is unenforceable due to uncertainty.

We review the grant of summary judgment de novo, applying the same legal

---

[1]Trizec entered into an agreement with Douglas County to provide the necessary funds.

standard used by the district court.  See, e.g., Kaul v. Stephen, 83 F.3d 1208, 1212

(10th Cir. 1996).  Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  If no genuine issue of material fact is in dispute, we determine whether

the district court correctly applied the substantive law.  See Kaul, 83 F.3d at

1212.  We also review questions of law de novo.  See, e.g., Wolfgang v. Mid-

America Motorsports, Inc., 111 F.3d 1515, 1524 (10th Cir. 1997).

## I.

## A.

Plaintiffs advance several arguments why Covenant 3(d) fails under

Colorado contract law.  First, they claim the description of the property lacks

adequate specificity to satisfy Colorado's Statute of Frauds, C.R.S. § 38-10-108,[2]

and Colorado contract law.  We disagree.

To satisfy Colorado law, a memorandum for the conveyance of land

must show on its face, or by reference to other writings, first, the
names of the parties . . . ; second, the terms and conditions of the

---

[2]Section 38-10-108 provides: "Every contract . . . for the sale of any lands or any interest in lands is void unless the contract or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party by whom the . . . sale is to be made."

contract; third, the interest or property affected; and fourth, the consideration to be paid therefor." . . . "If the names and intention of the contracting parties can be determined with reasonable certainty from the language of the instrument, and a valid contract is thereby disclosed, specific performance may be decreed thereon.

Micheli v. Taylor, 159 P.2d 912, 913 (Colo. 1945) (en banc) (quoting Eppich v. Clifford, 6 Colo. 493, 494-495 (Colo. 1883)). "Reasonable certainty in the ascertainment of the lands agreed to be conveyed is all that is required. If the writing contains indicia by reference to which, coupled with the defective designation otherwise, the identity of the premises can reasonably be determined, specific performance may be decreed." Shull v. Sexton, 390 P.2d 313, 319 (Colo. 1964) (en banc) (internal citations and quotation marks omitted). Thus, the contract must identify the land at issue with "reasonable certainty."

Covenant 3(d) accomplishes this. The parties knew in 1982 the planned route of C-470, and Yosemite Street already existed. Therefore, the parties knew with reasonable certainty the location of the proposed interchange. The fact that they failed to establish a specific legal description of the property until time of performance does not render the contract unenforceable. See Hill v. Chambers, 314 P.2d 707, 709 (Colo. 1957) (finding contract to convey one acre on which a house could be built was sufficiently certain, given external evidence of defendant's land and adjoining properties); Ehrich v. Durkee, 72 P. 814, 816 (Colo. 1903) (finding valid contract when vendee was to pick land equal to

- 6 -

$487.80 within one year from designated lots). See generally 6A Richard R. Powell & Patrick J. Rohan, Powell on Real Property § 880(1)[iii] (1995). We find Ehrich particularly apposite because, in that case, the parties did not identify the specific land to be conveyed until the vendee picked the property from a larger plot of land. The Colorado Supreme Court stated that as long as the larger plot of land and the land demanded by the vendee could be ascertained, the contract would be enforced. See Ehrich, 72 P. at 816. This case presents a similar situation. The parties knew the boundaries of Parcel B, the general location of the proposed interchange, and, in 1995, the precise metes and bounds of the requested right-of-way. Accordingly, the covenant sufficiently identified the property at issue.

**B.**

Plaintiffs also contend that the covenant fails because it did not specifically identify the vendee of the right-of-way. To support their contention, plaintiffs cite language from several older Colorado cases stating that Colorado law requires a contract for the sale of real property to identify a vendor and a vendee. See Eppich, 6 Colo. at 494 ("the note or memorandum must show on its face . . . first, the names of the parties, vendor and vendee . . ."); Micheli, 159 P.2d at 913 (quoting Eppich). We find those cases simply stand for the general rule that a contract for the sale of real property must identify the parties. See Shull, 390

P.2d at 316 ("A contract must contain the essentials -- *parties*, terms, subject matter and consideration.") (emphasis added); <u>Micheli</u>, 159 P.2d at 913 ("If the names and intention of the contracting parties can be determined with reasonable certainty from the language of the instrument . . . specific performance may be decreed thereon.").

Usually, the contracting parties are the vendor and vendee, as was the case in <u>Eppich</u> and <u>Micheli</u>. Here, the contracting parties were Trizec and The Good Partnership, both of whom the contract identifies. We conclude that the vendee of the right-of-way constitutes a third party beneficiary of the contract, subject to Trizec's "request." A third party beneficiary is created if the parties to the agreement intended to benefit a non-party. <u>See</u> <u>E.B. Roberts Constr. Co. v. Concrete Contractors, Inc.</u>, 704 P.2d 859, 865 (Colo. 1985) (en banc). "While the intent to benefit the non-party need not be expressly recited in the contract, the intent must be apparent from the terms of the agreement, the surrounding circumstances, or both." <u>Id.</u> In signing Covenant 3(d), Trizec and The Good Partnership clearly intended to promote the construction of an interchange by making the right-of-way available to the constructing party at no cost. Both the language of 3(d), which makes the conveyance of the right-of-way subject to Trizec's request, and the surrounding circumstances show the parties intended to benefit a party building the interchange.

Although Colorado does not have any specific law on point, the Statute of Frauds generally does not require a third party beneficiary to sign or be named in the contract. See Coleman v. Mountain Mesa Uranium Corp., 240 F.2d 12, 16 (10th Cir. 1956) (If . . . [plaintiff] was a third party beneficiary[,] he could sue for the enforcement of his rights under the contract, although he was not a party thereto or was not mentioned therein."); 72 Am. Jur. 2d Statute of Frauds § 364 (1974). In Coleman, we applied this rule to the Wyoming Statute of Frauds, which is similar to Colorado's. We therefore hold the rule applies to Colorado law as well. In addition, general contract law does not require identification of a third party beneficiary at the time of contract formation. 4 Arthur Linton Corbin, Corbin on Contracts § 781 (1951). "It is enough that he be identified at the time performance is due." Id. Trizec satisfied this requirement in its demand letter by requesting the transfer of the right of way to Douglas County. In short, Covenant 3(d) identifies the parties sufficiently to comply with Colorado law.

## C.

Finally, plaintiffs assert that Covenant 3(d) is void for indefiniteness because it fails to give any party the power to designate the land required for the interchange. We agree with the district court that the Covenant clearly gives Trizec the power to designate the property. The Covenant requires plaintiffs to provide "at Trizec's request . . . such easements, rights-of-way or other

- 9 -

accessways (aggregating not more than five acres) as shall be necessary or required for the construction and operation of either a full diamond or half diamond interchange . . . ." This language, especially in context of the entire agreement, see Carleno Coal Sales, Inc. v. Ramsay Coal Co., 270 P.2d 755, 757 (Colo. 1954) (en banc) (noting the meaning of contract provision must be determined in light of the whole agreement and intent of the parties); 5 Margaret N. Kniffin, Corbin on Contracts § 24.21 (rev. ed. 1998), empowers Trizec to identify the necessary land.

## II.

Plaintiffs' last argument involves the certainty of the district court's judgment. According to plaintiffs, the judgment is so uncertain as to inadequately state the type of relief granted or the rights and obligations of the parties. Plaintiffs claim the district court awarded an interest in the right-of-way to Trizec, but did not require specific performance, the normal remedy in a real property contract suit. Also, the district court suggested in a footnote that the intended vendee of Covenant 3(d) was the state, but allegedly awarded the interest to Trizec. We do not find the district court judgment void for uncertainty. We will, however, clarify the judgment as it affects the rights of the parties.

As noted above, we read Covenant 3(d) as giving Trizec the power to

designate the recipient of the easement.[3]  We construe the district court's judgment as recognizing Trizec's contractual right to designate the easement and have it conveyed by plaintiffs.  Since Trizec designated Douglas County as recipient, the interest now belongs to Douglas County.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment on the enforceability of Covenant 3(d) and its award of damages.

---

[3]Covenant 3(d) actually creates a future interest -- a springing executory interest -- in Trizec's designee.  The interest vested when Trizec sent its letter to plaintiffs designating Douglas County as the recipient and establishing the precise bounds of the easement.