**DOSS & HARPER STONE CO., INC., Plaintiff–Respondent,**

v.

**HOOVER BROTHERS FARMS, INC., Defendant–Appellant.**

**No. 27006.**

Missouri Court of Appeals, Southern District, Division Two.

March 31, 2006.

Michael C. Phillips, Blackwell Sanders Peper Martin, LLP, Kansas City, for appellant.

Kenneth A. Wagoner, Brill, Moore & Wagoner, P.C., West Plains, for respondent.

**KENNETH W. SHRUM, Presiding Judge.**

The mining lease at issue here was drafted by a person with rock quarry and mining experience but no apparent legal training. The document typifies why the public needs greater protection from the unauthorized practice of law by lay persons, whether by non-lawyer title company employees, on-line non-lawyer purveyors of legal documents, or others (as occurred here).

Soon after the subject lease was signed, one party thereto (the "Quarry") wanted out.[1] Accordingly, it sued "Landowner" claiming, *inter alia*, that the contract was unenforceable because it violated the statute of frauds and the rule against perpetuities. The trial court agreed and sustained Quarry's motion for summary judgment on both grounds. It also denied Landowner's motion for a partial summary judgment. Landowner appeals. This court affirms.[2]

The Quarry owns an eighty-acre tract of land near West Plains, Missouri, on which it operates a rock and limestone quarry. It also conducts quarry operations on leased land.

Landowner holds title to twenty tracts of land in Howell County, Missouri, comprising some six thousand acres. It owns additional real estate in other Missouri counties and in other states. Some of these tracts are farm land and others are commercial and residential property.

James Winnick ("Winnick") had worked extensively in the mining and explosive's industry, although he did not have a min-

ing or engineering degree. As a consultant for Quarry, Winnick was privy to and participated in negotiations between Quarry's and Landowner's representatives regarding a reciprocal lease of the parties' respective properties. Winnick's knowledge of those negotiations ultimately led him to prepare the subject lease. The lease was signed by officers of the respective parties on July 20, 2000.

The lease document provided, *inter alia*, that Landowner was leasing to Quarry the "exclusive mining rights on all properties presently owned and properties acquired during the term of the lease." The lease term was for "an infinite period of time." Among other things, Landowner was to receive (a) ".20 cents per tone [sic] for all stone mined" on its properties, and (b) lease rights to "undeveloped underground space ... created by mining out the 80 acres owned by [Quarry]." Another relevant contract provision recited this:

> "2.(G) [Quarry] agrees to first mine the approx. 1,000 acres adjacent to the existing quarry which is in the north and south side of Quarry Road. It is understood that certain portions of this property may be excluded from mining by [Landowner], i.e. *areas close to existing homes, and other business buildings which may suffer damage due to the mining operation.*" (Emphasis added.)

Quarry sued Landowner on July 12, 2002, alleging in Count I that the lease contract was unenforceable. After discovery was completed, Quarry moved for summary judgment on Count I. The trial

---

**1.** In this opinion we refer to plaintiff-respondent Doss & Harper Stone Company as "the Quarry" and to Hoover Brothers Farms, Inc., as "the Landowner." Both parties are corporate entities having perpetual existence.

**2.** Because we find the lease void and unenforceable for statute of frauds reasons, we

need not and do not address Quarry's second point regarding the rule against perpetuities. For that same reason, we do not include or discuss parts of the contract that gave rise to the trial court's finding that the lease violated the rule against perpetuities.

court sustained that motion, concluding the lease was void because it violated the statute of frauds and the rule against perpetuities. Landowner's appeal followed.

## STANDARD OF REVIEW

Our review here is essentially *de novo* as the propriety of the court's sustention of Quarry's motion for summary judgment is purely an issue of law founded solely upon the record submitted and the applicable law. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376[6] (Mo. banc 1993). Stated otherwise, the key to a sustainable summary judgment is a showing by the prevailing party that he or she has an undisputed right to a judgment as a matter of law. *Id.*, at 380[11].

## DISCUSSION AND DECISION

Landowner's first point charges the trial court erred when it found the mining lease invalid based on an alleged violation of the statute of frauds. Landowner concedes the questioned document had to comply with the statute of frauds, but insists compliance was shown in that the lease "contains an adequate description of the land to be leased which can be made perfect and certain by parol evidence."

■ In relevant part, the statute of frauds provides "[n]o action shall be brought ... upon any ... lease [of lands] for a longer time than one year ... unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith." § 432.010, RSMo 2000. Whether a writing satisfies the statute of frauds is a question of law. *Johnson v. Cook*, 167 S.W.3d 258,

262[6] (Mo.App.2005); *Ahrens v. Dodd*, 863 S.W.2d 611, 613 (Mo.App.1992). If a writing clearly fails to satisfy the statute of frauds, the party invoking the statute is ordinarily entitled to summary judgment.[3] *Arnold v. Broadmoor Dev. Co.*, 585 S.W.2d 564, 565 (Mo.App.1979); *Smith v. Int'l Paper Co.*, 87 F.3d 245, 247 (8th Cir.1996) (applying Missouri law).

■ To satisfy the statute of frauds a writing must contain the essential terms of a contract. *Johnson*, 167 S.W.3d at 262[7]. The "essential terms" are the parties, the subject matter, the price, the consideration, and the promises on both sides. *Id.* It has been said that the *subject matter*, i.e., the property conveyed or leased, is the most "essential part" of the contract. *Huttig v. Brennan*, 328 Mo. 471, 41 S.W.2d 1054, 1062 (1931). Thus, it is well-settled law that the writing must describe the land being sold or leased. 72 Am Jur 2d *Statute of Frauds*, § 240 at 746 (2001).

■ As to particularity or degree of certainty of the land description, the general rule has long been that "[t]he land need not be fully and actually described in the paper so as to be identified from a mere reading of the paper. But the writing must afford the means whereby the identification may be made perfect and certain by parol evidence." *Black v. Crowther*, 74 Mo.App. 480, 483 (1898). *See also Herzog v. Ross*, 355 Mo. 406, [1] 196 S.W.2d 268, 270 (banc 1946). "The writing must be a guide to find the land and must contain sufficient particulars to point out and distinguish the tract from any other." *Fox v. Courtney*, 111 Mo. 147, 20 S.W. 20, 21 (1892).[4]

---

**3.** Exceptions to this rule exist, e.g., where a recognized statute of fraud exception is asserted. That is not the situation here.

**4.** It should be noted that our recitation of Missouri law as set out in this paragraph and

in the two succeeding paragraphs is lifted, in large measure, from Judge Teitelman's dissent in *Peet v. Randolph*, 33 S.W.3d 614, 621–22 (Mo.App.2000).

■ Accordingly, a court will not enforce a contract for the sale or long term lease of real estate unless the contract or a written memorandum thereof either definitely describes the land or clearly provides, *within itself,* the "means" or "key" by which the land can be identified with reasonable certainty. *Macy v. Day,* 346 S.W.2d 555, 559 (Mo.App.1961); 72 AM JUR, § 241 at 747. *See generally,* Annotation: *Sufficiency of Description or Designation of Land in Contract or Memorandum of Sale, Under Statute of Frauds,* 23 A.L.R.2d 6, § 2 (1952 and Later Case Service).

In a strikingly similar expression of these principles, the Supreme Court of Missouri has declared:

"The law does not require that a contract for the sale of land shall in itself be wholly sufficient to identify the property. The writing is sufficient if it clearly reveals the intent of the parties with reference to the particular tract which is the subject matter of the sale and furnishes the means of its identification; or, as some cases hold, if it provides the 'key' to the identification—the applicable principle being that that is certain which can be made certain."

*Ray v. Wooster,* 270 S.W.2d 743, 749[1] (Mo.1954). The *Wooster* court also noted that the "key" or "means" within the writing must be a reference "to *external standards in existence at the time* and capable of being determined *beyond dispute.*" *Id.* at 749 (emphasis added). *See also Rone v. Reeves,* 20 S.W.3d 526, 529 (Mo.App.2000) (affirming trial court ruling that a contract was not legally enforceable under the statute of frauds because "[t]he contract on its face neither sufficiently provides the means for determining … the land to be conveyed nor on its face refers to then-existing external evidence which might be utilized in determining the parties' intention and applying the description contained within the contract.")

■ Any consideration of the "key or means" rule necessarily requires application of another well-established rule, namely that parol evidence is only admissible to *apply,* not to *supply,* a description of land in a writing. *Shy v. Lewis,* 321 Mo. 688, 12 S.W.2d 719, 721 (1928). As the *Shy* court explained, the description in a writing "must be sufficiently definite to identify the land by its own terms or by reference in it to external standards in existence at the time of the making of the contract and capable of being determined beyond dispute." *Id.* at 721[2]. When the land description in the writing is insufficient, "oral evidence is not admissible in aid of the memorandum, because the court will never receive such evidence both to describe the land and then to apply the description." *Id.* at 721[3].

■ Applying these principles to this case, the alleged lease fails to satisfy the statute of frauds. This is at once apparent upon reading part of subparagraph (G) of paragraph 2, to wit:

"It is understood that certain portions of this property may be excluded from mining by [Landowner], i.e. *areas close to existing homes, and other business buildings which may suffer damage due to the mining operation.*" (Emphasis added.)

Standing alone, inclusion of the italicized clause was fatal to the subject lease. This is so because neither this clause nor any other lease language affords a means whereby identification of the land being leased can be made perfect and certain by parol evidence. Where are the "key[s] or means" within the writing by which the

excluded land can be quantified and identified? Where does the writing reference an external standard in existence at the time the lease was signed that is capable of defining (beyond dispute) the size of the excluded tracts?

Answers to these questions are not found in the phrase "areas close to existing homes, and other business buildings which may suffer damage due to ... mining operation." Nor can answers to these questions be found elsewhere in the lease. Nothing in the lease references an external standard by which anyone could make an indisputable determination about what buffer area will be needed to prevent mining operation damage to existing and future homes and business buildings. Since this lease does not contain within itself a "means or key" whereby the identity of the land can be made perfect and certain by parol evidence, readily and without dispute, the trial court did not err when it ruled that the lease was void and unenforceable. *Ahrens,* 863 S.W.2d 611.

In so holding, we do not ignore Landowner's position, namely that "the Agreement specifies which portions will be excluded from mining," specifically "[t]hose portions within the 1,000 acres that Hoover Brothers determines should not be mined because the operations might damage nearby houses or buildings." Continuing, Landowner asserts that "[t]hose portions are readily identifiable because Hoover Brothers needs only to identify them. The right to make that determination rests exclusively with Hoover Brothers, and, when it does so, the location of the portions will be made certain. The agreement therefore provides the means by which the portions to be excluded from mining are to be definitely located, and the Statute of Frauds is satisfied."

Landowner says it could find no Missouri law to support this argument. Ac-

cordingly, it cites cases from other states that it says are supportive, specifically *Martin v. Skelton,* 567 S.W.2d 585 (Tex. App.1978), *Calder v. Third Judicial District Court,* 2 Utah 2d 309, 273 P.2d 168 (1954), and *C–470 Joint Venture v. Trizec Colorado, Inc.,* 176 F.3d 1289 (10th Cir. 1999).

■ We pause briefly to note that cases from other states, while not binding on Missouri courts, can be persuasive when the facts are similar and are based on sound principles and good reason. *United Fire & Cas. Co. v. Tharp,* 46 S.W.3d 99, 105[3] (Mo.App.2001). In this instance Landowner's foreign cases fail both tests, i.e., they are factually dissimilar to this case and apply rules and reasoning that are inapposite.

In *Martin,* 567 S.W.2d 585, a contract provision gave a buyer an "unqualified" five-year option to buy one acre or more out of a twenty-acre tract at a prescribed price. Within the option period, the buyer notified the seller he wanted two acres. His notice spelled out the dimensions, configuration, and location of what he wanted with sufficient specificity that a surveyor was able to precisely locate the acreage. *Id.* at 588. It was in that context that the Texas court said:

> " 'It appears that existence in one party of an unqualified right of determination or selection of an amount and location of premises (within an area certainly ascertainable) meets the requirements of the Statute of Frauds where there is no necessity of any further agreement or approval by the other party.' "

*Id.* at 588 (quoting *Best Building Co. v. Sikes,* 394 S.W.2d at 57, 62 (Tex.Civ.App. 1965)). That rationale has no application here. This follows because Landowner's alleged right to exclude part of its land from the lease is not unqualified, either as

to amount or location. To the contrary, it is a purported right governed by a wholly nebulous standard, i.e., what amount of land must be excluded, if any, to keep different buildings constructed of diverse materials, at multiple locations, safe from potential damages from mining operations when such work will, no doubt, be conducted at various depths and involve multiple mining technologies. It is a land exclusion standard that provides fertile ground for potential good faith disputes each time the exclusion issue arises.

In *Trizec*, 176 F.3d 1289, the questioned writing was in the form of a covenant whereby a partnership group agreed to a future conveyance or dedication of a minimum of five acres from a definitely described tract (Tract "B") for use as a "full diamond or half diamond interchange at South Yosemite Street and Colorado Highway 470." *Id.* at 1290. When Trizec ultimately wrote the owner of tract "B" requesting a conveyance of a right-of-way for the interchange, it included a legal metes and bounds description for 2.2 acres at the interchange site. *Id.* at 1291. The *Trizec* court ruled that the covenant met Colorado's statute of frauds requirement that the land at issue must be identified with "reasonable certainty." It reasoned as follows:

> "The parties knew in 1982 the planned route of C–470, and Yosemite Street already existed. Therefore, the parties knew with reasonable certainty the location of the proposed interchange. The fact that they failed to establish a specific legal description for the property until time of performance does not render the contract unenforceable.
>
> . . . .
>
> "The parties knew the boundaries of Parcel B, the general location of the proposed interchange, and, in 1995, the precise metes and bounds of the requested right-of-way. Accordingly, the

covenant sufficiently identified the property at issue."

*Id.* at 1292.

The *Trizec* covenant limited the future acreage acquisition to five acres and located it generally, i.e., at the interchange site. Trizec's ultimate request for a conveyance was for a tract within the contemplated interchange site and was substantially less than the five-acre maximum provided for in the covenant. Those facts wholly distinguish *Trizec* from this case since the lease here contains no standard by which the size of the excluded land can be made perfect and certain by parol evidence, readily and without dispute, either now or in the future.

In *Calder*, 2 Utah 2d 309, 273 P.2d 168, a prospective buyer agreed to buy 200 acres, a portion of which was definitely described in the contract. The balance of the subject acreage was to be selected (within sixty days of the contract date) by the buyer from a larger, definitely described tract. The buyer refused to make a selection, claiming the contract was so vague and uncertain as to render it unenforceable under the statute of frauds. The Utah court disagreed and ordered the buyer to specifically perform. In doing so, it embraced what it deemed to be the majority view that the statute of frauds is not violated (because of uncertainty in description) by a contract that provides for a future selection by the buyer of a prescribed number of acres from a larger definitely described tract. *Id.* at 169–70.

Whether Missouri courts, if clearly presented with similar facts, would follow the *Calder* view is something we need not decide. Suffice it to say that the *Calder* facts distinguish it from this case. Specifically, *Calder* is like the *Martin* and *Trizec* cases in that the right of selection in those three cases was not encumbered by standards uncertain in their nature. Contrari-

ly, Landowner's right to select excluded tracts in this case is riddled with uncertainty; an uncertainty so profound that it renders the lease unenforceable and void. The trial court did not err in so ruling. Quarry's first point is valid.

The judgment of the trial court is affirmed.

BARNEY, J., and BATES, C.J., concur.